The action stood continued nisi, and at the March term in Suffolk, the opinion of the Court was delivered by
Parsons, C. J.
The plaintiffs found their claim on the resolution of the legislature recited in the declaration; on the alteration of the former sluice-way ordered by the committee therein appoint ed ; on the refusal of the defendants to make that alteration seasonably ; on the authority given by Mr. Loud, as a sub-committee, to the plaintiffs, to make that alteration; and on the plaintiffs’ making :"t pursuant to that authority.
The defendants object to the claim of reimbursement of the money paid to defray the expenses of the committee; and we are satisfied this objection is well founded. The resolve is silent on this subject, and the only charge which it imposes on the owners of the dam is three fourths of the expenses incurred in altering the sluice-way.
The defendants also object to the claim for the expenses of making the alterations in the sluice-way, arguing that the legislature had no authority to pass the said resolve; because their dam is an ancient dam, derived from a grant by the town of Dorchester in 1633, held by them and by those whose estate they have therein, without any sluice-way for *the passage of fish from [*527 ] that time to the year 1789, when the legislature first directed that a passage should be opened for fish ;—because, in the year 1633, a wear for the taking of fish was granted as appurtenant to their mi 1, by which the grantee, his heirs and assigns, had a several fishery between the dam and the sea, and that this grant of a wear was, in the same year, confirmed by the colony legislature, so that the public have no right for the passage of fish above or through *462 their wear;—because, if the public have this right, it should bo exercised by the intervention of a jury to describe the site and dimensions of the sluice-way, and not by a committee of the General Court, who may, through error or mistake, order the whole dam to be prostrated, and thereby destroy or render useless the estate the defendants have in the mill;—because, if the public have not this right, but claim to take it for the public use, the commonwealth is bound by the constitution to make a reasonable compensation to the owners, and not charge them with the expense of making the sluice-way.
The grants on which the defendants rely are made part of the case. The grant by Dorchester, relating to the dam, is in these words: “ It is generally agreed that Mr. Israel Stoughton shall build a water-mill if he see cause.” Then follows a grant to him of a wear adjoining to his mill; and no person is to cross the river with a net or otherwise to the prejudice of the said wear; but Stoughton is to sell the alewives at five shillings per thousand, and the other fish at reasonable rates. The colony legislature in 1634 confirmed the grant of the wear to Stoughton and his heirs, he agreeing to build and maintain a horse-bridge over the river.
The wear thus granted and confirmed amounted to the franchise of a several fishery at that place, but it extended to no other place on the river above it. And this franchise cannot be construed to include a right of excluding all fish from passing above the wear. The value of this fishery depends on the shoals of fish that enter the river to pass to the ponds above to cast their spawn ; and if none were allowed to pass, the fishery would be of little value, and the public, to whom Stoughton was obliged to sell, would lose their supply, which was one of the considerations of granting the franchise.
* f 528] * We are therefore satisfied that this franchise, if it were not lost, would be no objection to the right of the public to have a convenient passage-way for the fish to ascend the river to the ponds. In examining the grants, this franchise is not appurtenant to the mill, but is a several independent interest, granted on conditions. And the case does not state that it was ever exercised by Stoughton, or by those who claim under him; and, at this time, we must presume that it is lost and gone by nonuser.
The ancient grants by towns .are very loosely expressed, and when a fee was intended, words of inheritance are seldom used. When a long possession by the grantee, his heirs or assigns, has followed, the original grant has uniformly been considered as a grant of a fee. In this case, we are therefore of opinion that Stoughton took a fee m the mill privilege, as it is usually called in this state, *463 And having a privilege to build a mill, he necessarily had a right to erect a dam, to raise water sufficient to drive his mill.
But the right to build a dam for the use of a mill was under several implied limitations. One was to protect private rights, by compelling him to make compensation to the owners of land above, for, and damages occasioned by, overflowing their lands: another was to protect the rights of the public to the fishery; so that the dam must be so constructed that the fish should not be interrupted in their passage up the river to cast their spawn. Therefore every owner of a water-mill or dam holds it on the condition, or perhaps under the limitation, that a sufficient and reasonable passage-way shall be allowed for the fish. This limitation, being for the benefit of the public, is not extinguished by any inattention or neglect, in compelling the owner to comply with it. For no loches can be imputed to the government, and against it no time runs so as to bar its rights.
If the government should, in its grant of a mill privilege, expressly or by necessary implication, waive this limitation, it would be bound. But it would be an unreasonable construction of the grant by Dorchester, to admit that by it all the people were deprived of a free fishery in the river above the dam, to which, until the grant, they were unquestionably entitled.
* The public, therefore, having a right to the benefits of [* 529 ] this limitation, as to the mill and dam of the defendants, there must be some remedy by which this public benefit may be secured. • But this remedy, say the defendants, cannot be obtained by any authority of the committee of the General Court, but should be sought for through the intervention of a jury.
The legislature may make all laws not repugnant to the constitution ; and we do not know that this law is repugnant to it. And the usage of the General Court to appoint committees to locate and describe the site and dimensions of passage-ways for fish is ancient, and has been long continued. But if a committee, thus appointed, should locate and describe a passage-way for fish unnecessary and unreasonable, by which the property of the owner of the mill was injured without any public benefit, we do not admit that he would be without remedy. The owner holds his privilege subject to the limitation, that a reasonable and sufficient passageway should be allowed for the fish. Beyond this, the public has no interest, and private right is invaded. Any prostration of the dam by a committee, not within this limitation, would be an injury to the owner, for which he might appeal to his country, and have a remedy by the verdict of a jury.
Another objection made was, that if this resolution was constitu *464 tional, the legislature might authorize strangers to enter without right on the freehold or lawful possession of another.
This objection, supposing that strangers enter without right, is begging the question. For if the owner of the dam hold it under the limitation mentioned, that limitation must- extend to give a right to the government to enter and remove obstructions, which, if not removed, would defeat the limitation.
In this action, it does not appear that, at the trial, the defendants made any objection to the necessity or reasonableness of the alteration of the sluice-way ordered by the committee; on this ground, therefore, he has now no right to complain.
It has been further argued that, if the resolve is constitutional, yet the plaintiffs cannot maintain this action, for several reasons. The resolve authorizes the committee to order alteraf * 530 ] tians *in old passage-ways, or to direct new passageways to be made. Whoever, therefore, say the defendants, make these alterations, are agents of the committee, and the committee, who are answerable to their agents, must bring the action.
If this objection were to prevail, no committee would ever undertake the trust. And as their powers are to locate and describe the requisite alterations, but not to make them, — if this objection should not prevail, it is argued that, after the committee have made the order, and given notice to the owner of the dam, they have executed all their powers; and it is the duty of the owner of the dam to make the alterations; and if he disobey the order, he may be punished by indictment. There might be some weight in this objection, if the authority of the committee were confined to the issue of orders; but they are expressly authorized to cause new fish-ways to be opened. The work may therefore be done under their direction, if the owner refuses to remove the obstruction which ho has placed or continued.
But it is denied that the committee could authorize three towns jointly to make this alteration, so as to give them a joint action.
We think there is some weight in this objection, as it is not easy to conceive how a joint authority could lawfully be vested in three distinct independent corporations, who can act only by a major vote in distinct corporate meetings, by the committee under this general authority given them. But we do not think it necessary to decide on this point, because we are satisfied that the remaining objection is fatal against the action.
This objection is, that it was not competent for Mr. Loud, as a sub-committee, to execute any of the powers of the committee, and therefore he could not authorize the plaintiffs or any other persons *465 to make the alteration, so far as to give them a right of action to recover a compensation.
The authority given to the committee is, by the terms of the resolve, to be exercised by them, or the major part of them. The^ exercise of this authority is personal, and cannot be delegated. If it could be delegated, it might be delegated to any * other man, as well as to Mr. Loud, one of the commit- [*531 ] tee. If the committee, or a major part of them, had exercised the powers given them, it might have been thought by them reasonable to give the defendants time until the next spring to make the alterations; or they might have employed other persons than the plaintiffs to make them. However this might have been,it is extremely clear that the powers given to the committee must be exercised by all, or by the greater part, and that they could not be delegated to Mr. Loud, or to any other person.
For this reason, the verdict must be set aside, and a general verdict be entered for the defendants, (a)

 [Kupfer vs. Augusta, 12 Mass. Rep. 185. — Tippets vs. Walker, post, 595. — Emerson vs. Prov. Hat Manuf. Co., 12 Mass. Rep. 237. — Ed.]