## GILLIS v. BAILEY.

The deed of conveyance of a lot of land in the city of Manchester, contained the following condition, viz. " And whereas the corporation is induced to dispose of its lands in large parcels, and at prices below the true value, in order that the buildings erected thereon may not be crowded together, but may each be surrounded by a space of open ground; and for this purpose it has been agreed between the parties to these presents, that only one single dwelling-house, with a shed, barn, and other out-buildings requisite for the use of the same, shall within twenty-five years from this date be erected, or placed on the lot of land above described; and the price for which the same is hereby sold, has been regulated by this consideration; now therefore," &c. It appeared that a person who derived title to the premises under the grantee in said deed, erected a building upon said premises, two stories in height, which was designed, and so constructed, as to accommodate three different families in severalty, and was so fitted up as to be occupied, and was, in fact, occupied by six families at a time. There were doors, however, connecting the whole building; but those between the separate tenants were kept fastened. A plank partition was put up in the cellar under the front part of the house, but was not kept up; and the cellar under the southeast part of the house was separate from the rest of the cellar. It was *held*, that the building was not a "single dwelling-house" within the condition of the deed, but was an erection in violation thereof.

The deed of conveyance contained a further condition, as follows, viz. "If any building other than those before mentioned, shall within twenty-five years from this date, be erected or placed on the said land, and shall not be removed therefrom within three months after a notice, in writing, to remove the same, shall be given by the said corporation to the owner or person in possession of the land, the said corporation may immediately, or at any time within three years thereafter, and as often as any other than the before-mentioned buildings shall, within twenty-five years from this date, be erected, or placed on the said land, enter into and upon the buildings so erected and placed, in breach of the above-written condition, and hold the same," &c.

On the 19th day of October, 1842, the corporation, the grantor in said deed, gave the defendant a written notice, requiring him to remove the building, erected on said lot, as aforesaid, within the term of three months, but the corporation did not, at any time within three years thereafter, proceed to take possession of the building, according to the condition of the deed.

On the 10th day of July 1847, the corporation gave the defendant a written notice, requiring him to remove the buildings within three months.

It was *held*, that although the right of the corporation to enter into possession of the building, resulting from the erection of the building, and the notice of October 19th, 1842, was forfeited or waived, by reason of the failure of the corporation to proceed to take possession within three years from the date of the notice; nevertheless, by virtue of the new notice of July 10th 1847, and the continuance of said erection, the right of the corporation to enter into the premises, was revived and renewed.

Gillis *v.* Bailey.

The testimony of architects and builders, that the building, erected on said lot, was what is known as *a dwelling-house, and not as a block of buildings*, and that a house with doors leading through the house from one extremity to the other is by them called and known by no other name, style, or term, than " a house," was held incompetent for the purpose of showing that the building erected on said lot was " a single dwelling-house," within the meaning of the condition of the deed.

The directors of a corporation are merely its agents, and are not the corporation.

An agent cannot delegate to another, any portion of his authority requiring the exercise of discretion or judgment, unless, in the authority conferred upon the agent, is involved the power of substitution by the agent in express terms, or, at least, by necessary implication.

The by-laws of the corporation provided for the choice of nine directors, and that a majority of the directors should constitute " a quorum for the transaction of business," and that the directors should " exercise a general superintendence and control over the affairs of the corporation," and have power " to sell lands, and tenements, and mill-powers belonging to the corporation, on such terms and conditions, as they might deem advantageous to the corporation," and that they might " direct and authorize the treasurer, in all such cases, to sign and affix the seal of the corporation to such deeds as may be necessary to convey any lands, and tenements, or mill-powers, which they may have sold; the consent of any two directors to be affixed to any such deed." A power of attorney was executed by the treasurer of the corporation and approved by five of the directors, authorizing R. R. in behalf of the corporation, and as their agent and attorney, among other things, to enter upon all lots of land sold by the corporation, where the conditions of the deeds had been violated, and to hold the same for the corporation, and to improve the lots, for and in the name of the corporation, " or to lease the same to such persons, and for such times and rents, and on such conditions as he may deem proper, or any part of said lots or of said buildings." R. R., as agent of the corporation, entered upon a lot of land, and, in pursuance of said power of attorney, executed a lease thereof to one G., for the term of five years. It was *held*, that the directors were not authorized to delegate their authority to R. R. to lease the premises, and that the lease aforesaid was unauthorized and void.

EJECTMENT, for a certain tract of land situated in Manchester, containing one half acre, more or less, being part of lot No. 13, on Lowell Street. The writ was dated October 11, 1847.

Plea — the general issue.

It appeared, on the trial, that Philip Stevens once owned and occupied the premises in dispute, and that he conveyed the same, together with other lands, by deed of warranty, to the Amoskeag Manufacturing Company, November 12, 1835 — that said company is a corporation legally established — that on the 24th of

Gillis *v.* Bailey.

October, 1838, the company conveyed the premises to Ziba Gay, by a deed containing the following conditions and restrictions viz. " And whereas the corporation is induced to dispose of its lands in large parcels and at prices below the true value, in order that the buildings erected thereon may not be crowded together, but may each be surrounded by a space of open ground; and for this purpose it has been agreed between the parties to these presents, that only one single dwelling-house, with a shed, barn, and other out-buildings requisite for the use of the same, shall, within twenty-five years from this date, be erected or placed on the lot of land above described, and the price for which the same is hereby sold, has been regulated by this consideration : Now, therefore, this conveyance is made upon the express condition, that if any building other than those before mentioned, shall within twenty-five years from this date, be erected or placed on the said land, and shall not be removed therefrom within three months after a notice in writing to remove the same, shall be given by the said corporation to the owner, or person in posses-sion of the said land, the said corporation may immediately, or at any time within three years thereafter, and as often as any other than the before-mentioned buildings shall, within twenty-five years from this date be erected or placed on the said land, enter into and upon the buildings so erected or placed in breach of the above-written condition, and hold the same, with the land under them and adjoining thereto for a distance, on each side, of 30 feet, and a passageway of fifty feet in width, from the same to the nearest street or public way, to the sole use and benefit of the said corporation, free from all incumbrances, until the ex-piration of the said period of twenty-five years ; with a right to remove the said buildings or any part thereof, or repair or alter the same, at the pleasure of the said corporation, and to use and permit others to use and occupy the same ; and without being liable for the expense of erecting said buildings, or for any rent for the said premises, or accountable for the rents and profits which may be received therefrom, or for the value or proceeds of any materials which may be removed or taken from the same by the said corporation or others ; and without being under ob-

ligation to keep or leave the same in repair, or to rebuild or to restore the same in case of removal or destruction in any way, or liable for any injury which may happen or be caused to the same, by the said corporation or otherwise, and whether by design or negligence, or in any other manner."

Gay, conveyed the premises to Samuel Dana, and Dana to the defendant, and the defendant claims under said company by force of the title derived from them.

After Bailey became the purchaser, and prior to 1842, he erected a building upon said lot two stories high. The building was so finished as to accommodate three different families in severalty — and was also fitted up so as to be occupied, and was actually occupied by six families at a time. There were, however, doors connecting the whole building, and those between the separate tenants were kept fastened. A plank partition was put up in the cellar under the front part of the house, but was not kept up. The cellar under the southeast part of the house was separate from the rest of the cellar.

The by-laws of the Amoskeag Company provide, among other things, " that there shall be chosen from the stockholders, nine directors, one of whom shall be elected by them to be their president, and the president of the corporation. A majority of the board of directors shall constitute a quorum for the transaction of business." They also provide that " said directors shall exercise a general superintendence and control over the affairs of the corporation " — that they shall have power " to sell lands, and tenements, and mill-powers, belonging to the corporation, on such terms and conditions as they may deem advantageous to the corporation. And they may direct and authorize the treasurer in all such cases to sign and affix the seal of the corporation to such deeds as may be necessary to convey any lands, and tenements, or mill-powers, which they may have sold, the consent of any two directors to be affixed to every such deed."

On the 20th of June, 1852, said company executed a power of attorney to Robert Read, authorizing him to give notice in writing to the owners or persons in possession of lots who have violated the conditions of their deeds, to remove the buildings,

Gillis v. Bailey.

and in default, to enter upon and take possession and hold for the use of the corporation, all such buildings, with such parts of the lots as the corporation was authorized to hold according to the condition of said deed.

On the 10th of July, 1847, Read, as agent and in behalf of the company, gave the defendant a written notice, setting forth the condition of the deed to Gay, and requiring the defendant to remove the building erected upon said lot, contrary to the condition of the deed to Gay, within the term of three months, &c.

On the 7th of October, 1847, the company executed a further power of attorney to said Robert Read, to enter upon all those lots where the conditions of the deeds had been violated, and notice given to remove the buildings and to hold the same for the company. This power was executed by the treasurer and approved by five of the directors. It contained a further provision as follows: "And the said company do further authorize said Read, and hereby appoint him their agent and attorney to hold and improve said lots and buildings for and in the name of said company, or to lease the same to such persons and for such times and rents, and on such conditions as he may deem proper, or any part of said lots or of said buildings."

On the 11th of October, 1847, Read entered into the premises as agent of the company for condition broken, requiring the defendant to give up the possession, and upon that entry executed a lease to the plaintiff for the term of five years, and delivered it to him upon the premises. The defendant refused the plaintiff the possession. The buildings remained as represented on the plans used on the trial, until after this suit: the westerly part was then removed.

The defendant objected that Read had no authority to execute the lease to the plaintiff, on the ground that the treasurer and directors could not give him authority so to do, that the by-laws giving *them* the authority to lease did not empower them to authorize an agent so to do. He further contended that the building erected by him was not a violation of the condition in the deed to Gay. The defendant also showed that on the 19th of October, 1842, the company gave the defendant a written

notice, setting forth the condition of the deed to Gay, and requiring the defendant to remove the building erected upon the premises, contrary to the condition of the deed to Gay, within the term of three months; and he contended that inasmuch as the company had not proceeded within three years to take possession of the building according to the condition of the deed, their right to proceed after that time had become barred, and that the right could not be revived by any new notice.

The defendant offered to prove, by architects and builders, that the building erected by the defendant on said lot was what is known as a dwelling-house and not a block of buildings; that a house with doors leading through the house from one extremity to the other, is by architects and builders called and known by no other name, style or term than "a house." The court ruled the evidence inadmissible. And also overruled the exceptions and positions of the defendant, and instructed the jury that if the defendant had erected a building upon the lot designed to accommodate several families, suitably constructed for that purpose and put to that use by him, it was a violation of the condition of the deed, notwithstanding there were doors in the several partitions between the different tenements.

A verdict was thereupon taken by consent for the plaintiff, on which judgment was to be entered; or the verdict to be set aside, and a new trial granted, as the opinion of the court should be upon the foregoing case.

*Morrison & Fitch,* for the defendant.

Three questions arise upon this case for the consideration of the court.

1. Had the directors power to constitute Read their agent to sell lands?

The directors are clothed only with such powers as have been delegated to them by the corporation. Have they then the power to appoint an agent or attorney to act for them, unless the power of substitution is expressly given by their principal? If not, then they had no authority to appoint Read their agent or attorney to convey lands; and nothing passed by the pretended conveyance from Read to the plaintiff.

It does not appear that they had any such power.    Angell & Ames on Corp. chap. 9.

2. By the condition in the deed the corporation limited the time in which they had the right to enter, to three years after notice given.    The corporation gave the defendant notice October 19, 1842, since which time no buildings have been erected on the premises.    The time fixed by the corporation expired; and we contend that their right is barred by the limitation in their own deed, and cannot be revived by a new notice.    Where there is any doubt as to the construction of a deed, it is to be taken most strongly against the grantor.

3. The question, what is a single dwelling-house? is to be determined by the evidence of architects, builders, and persons of skill.    It certainly cannot depend on the size, form, or manner in which it is occupied, but is as clearly a question of fact as any that can be presented.

*Daniel Clark,* for the plaintiff.

WOODS, J.    It is alleged that the instructions given to the jury in this case were erroneous.    The jury were told that "if the defendant had erected a building upon the lot in question, designed to accommodate several families, suitably constructed for that purpose, and put to that use by him, it was a violation of the condition of the deed to Ziba Gay, notwithstanding there were doors in the several partitions between the different tenements." Was this instruction correct?    Did the direction thus given contain a proper construction of the condition of the deed, relative to the character of the building to be erected upon the lot?    The clause in the condition of the deed, which was the subject of consideration, was as follows, namely, — "And whereas the corporation is induced to dispose of its lands in large parcels, and at prices below the true value, in order that the buildings erected thereon may not be crowded together, but may each be surrounded by a space of open ground; and for this purpose it has been agreed between the parties to these presents, that only one single dwelling-house, with a shed, barn, and other out-buildings requisite

for the use of the same, shall, within twenty-five years from this date, be erected or placed on the lot of land above described ; and the price for which the same is hereby sold has been regulated by this consideration : now therefore," &c.

The case finds that the building (which was two stories high) was so finished as to accommodate three different families in severalty, and was so fitted up as to be actually occupied by six families at a time. The instructions then were, in effect, that such a building as was erected on the lot was not such an one- as the condition contemplated, but was in violation of its provisions ; that such a building was not a single dwelling-house, but was something more or different therefrom.

In giving a construction to a deed or other contract, regard is to be had to the intention of the parties, such intention being gathered from the language of the whole instrument, and viewed in the light of surrounding circumstances. It is apparent that the corporation had in view, in annexing the condition to the deed, the prevention of a too crowded state of the buildings, and, as a consequence, of too great a density of population upon the lot. The construction of the building was to be such as to allow of open space around each building upon the lot. It is apparent that the lot was not intended to be fully occupied to the extent of its capacity by buildings. It was sold for less than its real value, and for the express reason of the restricted right of occupancy of it by buildings specified in the condition of the deed. Now that the condition did not contain, and was not intended to contain, a restriction of the right of the grantee, in relation to the extent of the occupancy of the lot with buildings, is not open to doubt, indeed, it is not denied by the defendant. But it is contended that the building, although designed to accommodate several families, and suitably constructed for that purpose, is not beyond the restriction, and is not a violation of the condition of the deed.

But the court are unable to adopt the view of the defendant, and are of the opinion that it cannot be sustained. We are of the opinion that under the restriction, imposed by the condition, the defendant had the right of erecting a dwelling-house

only intended and calculated for the convenient accommodation of one family, with the usual apartments, and suitably constructed for such a purpose. Such a construction is believed by us to be according to the most obvious meaning of the terms used, as descriptive of the building to be erected,; "a single dwelling-house" being a term not shown to have any technical meaning, as the result of usage in the locality of the building in question, nor apparently used in any new or peculiar sense, must be construed, according to the established use of language, as applied to the subject-matter, and modified by the terms of the whole instrument, and by existing circumstances. *Eaton* v. *Smith*, 20 Pick. 150. And such a construction limits the right, as we think, to the erection of one house, designed and calculated only for the convenient accommodation of a single family. And we think that the mere fact that there were doors opening, and connecting, and leading through the whole building, can make no difference. We understand the buildings to have been three separate and distinct residences, calculated and designed for the separate residence of three several families, and the jury have so determined, in full view of the fact, among others, of the existence of the connecting doors in the separating walls. If such a building as the one shown to have been erected, were holden to be such an one as the deed authorizes, it is clear that the manifest object of the corporation, to prevent too dense a population, would be altogether defeated; for the building is expressly calculated to accommodate families to the full extent of the capacity of the lot sold.

The evidence offered by the defendant, and which was registered by the court below, could have made no difference in the result, in determining whether the building was a violation of the condition of the deed or not.

It was not offered to show that the words "single dwelling-house" were used in a technical sense in the condition of the deed, or that those terms have, by usage among builders and architects, acquired any settled meaning and definition in Manchester, the locality of the building. Nor were the words, descriptive of the building, new, or apparently used in any

13*

new or technical sense; nor was there any attempt to show them to have acquired any peculiar meaning distinct from the popular or ordinary sense of the words as applicable to the subject-matter of their use. Nor was this a case in which, from the context, it was evident that the words were used in the sense claimed for them by the defendant, or in any peculiar sense in which it was necessary, in order to effectuate the purposes of the parties, so to regard them. Nor do we regard this as a case in which there either is wanting express stipulations, or where those used are equivocal, and so requiring or admitting parol evidence of the meaning of the terms used. The evidence offered was receivable to go to the jury, upon no ground upon which evidence of this character has been holden to be receivable. 1 Phill. Ev. 557; *Robertson* v. *French*, 4 East, 135; 1 Greenl. Ev. § 292; *Taylor* v. *Briggs*, 2 Carr. & Payne, 525; *Eaton* v. *Smith*, 20 Pick. 150; *The Schooner Reeside*, 2 Sumner, 567. The defendant offered to prove, by architects and builders, that the building erected by him, on the lot was what is known as a dwelling-house, and not a block of buildings; and that a house with doors leading through the house, from one extremity to the other, is, by architects and builders, called and known by no other name, style, or term, than "a house." The evidence thus offered was rejected, and we think properly. It was, under the circumstances of the case, as we regard it, merely immaterial. The question was not, whether the building erected on the lot was a dwelling-house. There was no dispute about that. It was, whether it was "a *single* dwelling-house." And, notwithstanding the fact had been proved to the satisfaction of the jury, or had been admitted even, that the building was "a dwelling-house," still the court would not have been justified in holding that it was "a *single* dwelling-house," such as is described in the condition of the deed. So also if it had been proved, or assumed, that the building was "a house," notwithstanding the existence of the doors connecting and leading through all its apartments, the court would not, in our opinion, have been justified in instructing the jury that the building was "a single dwelling-house," within the meaning of the deed. No evidence of archi-

Gillis *v.* Bailey.

tects or builders, was offered to prove that the erection was in fact, or according to any use or definition acquired by usage of the terms employed in the contract to describe the building, "a single dwelling-house." It was offered to show that the building was what is known as a dwelling-house, while, at the same time, it was offered to show, that "a house with doors leading through the house, from one extremity to the other," (which was the admitted condition of this building,) is by architects and builders known by no other name, style, or term, than "a house." The proposition of proof itself smacks somewhat of contradiction; for while it offers to prove that such a building as that erected on the lot is known by *no other name, style, or term* than "a house," at the same time it proposes to show, that it was known as "a dwelling-house." But the terms "house" and "dwelling-house," are certainly not identically the same, as matter of descriptive language. We are clearly of the opinion, that the ruling of the court below was, in this particular, correct, and can form no ground for setting aside the verdict.

It is further contended, that inasmuch as the corporation, on the 19th of October, 1842, gave the defendant a notice in writing, requiring him to remove the building erected upon the lot, and inasmuch as the corporation did not, within three years thereafter, proceed to take possession of the building, according to the condition of the deed, their right so to do, after that time, became barred; and that the right could not be revived by any subsequent notice.

But we are of opinion that, although the right of the corporation to enter into possession, resulting from the erection of the building, and the notice of October 19, 1842, may have been forfeited or waived by reason of their failure to proceed to take or acquire possession within three years from and after the date of said notice, nevertheless, by the new notice of July 10, 1847, and the continuance of the erection, the right to enter upon the premises was revived and renewed. The condition is, that "If any building, other than those before-mentioned, shall, within twenty-five years from this date, be erected or placed on the said land, and shall not be removed therefrom within three months

after a notice in writing to remove the same shall be given by the said corporation to the owner, or person in possession of the said land, the said corporation may immediately, or at any time within three years thereafter, and as often as any other than the before-mentioned buildings shall, within twenty-five years from this date be erected or placed on the said land, enter into and upon the buildings so erected or placed, in breach of the above-written condition," &c.

The failure to proceed to enter within three years after the notice of October, 19, 1842, did not operate as a forfeiture of all right to enter at all, and to take possession of the buildings erected prior to said notice; but only all right to enter until after a new notice should be given. A failure thus to enter within three years did not give a right to continue the erection made without right, in violation of the condition of the deed, but only created a waiver of the right to enter, flowing from the erection and the first notice. We regard the meaning of the condition to be this: That whenever a building other than a single dwelling-house, &c., is found erected and being upon the lot in question, within twenty-five years after the date of the deed, and a notice is given to remove it, and it is not done within three months, the corporation may enter and take possession, provided it be done within three years after such notice is given. And this right in the corporation, to give notice and enter within three years after any such notice, shall continue so long as any buildings, other than "a single dwelling-house," shall be found placed and being upon said lot. In short, so long as the erection shall continue placed upon the lot, which is not such as is contemplated by the deed, the right will remain in the corporation, upon notice and within three years after any such notice, to enter and possess the premises. Such we regard as the plain meaning of the condition of the deed under consideration. The ruling of the court, in this particular, was therefore correct.

The objection taken to the sufficiency of the authority of Read to lease the premises, was well founded.

His authority was derived from a power of attorney, executed by the treasurer of the corporation and approved by five of the

Gillis *v.* Bailey.

directors, being a majority of the whole number. The power attempted to be conferred upon Read was an authority, among other things, to enter upon all the lots claimed by the corporation, where the conditions of the deeds of them had been violated, and to hold and improve the same, " or to lease the same to such persons, and for such times and rents, and on such conditions, as he may deem proper, or any part of said lots or of said buildings." The power of attorney, then, purported to confer authority, not only to execute a lease but also, to negotiate and agree upon the terms and conditions, and continuance of the same. In short, it contemplated an exercise of the discretionary power of stipulating for the terms and conditions of the lease, and carrying the same into effect by a proper execution of it in behalf of the corporation. It is not open to doubt, that the board of directors, or a majority of them, might have contracted for the letting, and, in connection with the treasurer, have executed a lease of the premises. The by-laws provided for the choice of nine directors of the company; from among the stockholders, and constituted " a majority of them a quorum for the transaction of business;" and provided that " said directors shall exercise a general superintendence and control over the affairs of the corporation," and " should have power to sell lands, and tenements, and mill-powers, belonging to the corporation, on such terms and conditions as they may deem advantageous to the corporation," and might " direct and authorize the treasurer in all such cases to sign and affix the seal of the corporation to such deeds as may be necessary, of lands, and tenements, or mill-powers which they may have sold," &c.

The authority thus conferred by the by-laws, is that under which the directors acted in the appointment of Read as the attorney of the corporation, to lease the lots of land forfeited to the corporation by the acts of the grantees, done in violation of the conditions of the grants.

Here was no express authority given the directors to delegate any portion of their power to sell or lease such lands of the corporation, nor is any such authority implied in the language employed in the by-laws, or in any way necessary or requisite for

the advancement of the interests of the company. The directors of a corporation are merely its agents, and are not the corporation. *Tippets* v. *Walker*, 4 Mass. Rep. 597 ; *Despatch Line of Packets* v. *Bellamy Man. Co.* 12 N. H. Rep. 226. Angell & Ames on Corporations, 149, 150. The directors, who acted in this case, were the agents of the corporation, and the question is, whether, as such agents, they had authority to delegate to Read their authority to lease the premises. In Angell & Ames on Corporations, page 149, it is said, that " The directors of a corporation, empowered by it to contract on its behalf, have no power to appoint sub-agents to contract for the corporation, unless such power is expressly given them ; and accordingly, contracts made by such sub-agents will not be binding on the corporation. The personal confidence of the principal in the agent is supposed to be the motive of the latter's selection and appointment, and hence he cannot delegate the trust reposed in him, unless expressly authorized so to do." In *Tippets* v. *Walker*, 4 Mass. 595, *Parsons*, C. J., says, " The corporation is not bound by this contract, unless it gave the directors, its immediate agents, a power to substitute agents under them, by whose contracts it should be bound."

Mr. Chancellor *Kent* lays down the doctrine upon this subject thus : " An agent, ordinarily and without express authority or a fair presumption of one, growing out of the particular transaction, or of the usage of trade, has not power to employ a sub-agent to do the business without the knowledge or consent of his principal. The maxim is that *delegatus non potest delegare ;* and the agency is generally a personal trust and confidence which cannot be delegated ; for the principal employs the agent from the opinion which he has of his personal skill and integrity, and the latter has no right to turn his principal over to another, of whom he knows nothing." 2 Kent, Com. (4th ed.) 633.

The case of *Stoughton & al.* v. *Baker & al.*, 4 Mass. Rep. 522, was thus : Tillinghast, Loud, and Turner, by a resolve of the Massachusetts Legislature, were appointed a committee to give notice to the parties to repair the several dams on the Neponset River, between the sea and Paul's bridge, and to order such

alterations to be made in the fish-ways through said dams, and to *cause such fish-ways* to be made round said dams, as, in the opinion of them, or a major part of them, should be sufficient for the passage of shad and alewives. Alterations were ordered by the committee, and the owners of the dams refused to comply with the order. Loud was appointed a sub-committee to see that the orders were complied with, and upon information of such refusal of the defendants, ordered the plaintiff to make the alterations. It was objected that it was not competent for Loud to execute any of the powers of the committee, and the objection was sustained. *Parsons*, C. J., who delivered the judgment of the court said, that " The authority given to the committee is, by the terms of the resolve, to be exercised by them or a major part of them. The exercise of this authority is *personal and cannot be delegated*. If it could be delegated, it could be delegated to any other man as well as to Mr. Loud."

So in *Emerson & al.* v. *The Providence Hat Manufacturing Company*, 12 Mass. Rep. 237, it was decided that although a general agent of a trading company, being himself one of the company, may have authority to make promissory notes, binding on the corporation, yet a sub-agent appointed by him would have no such authority. *Parker*, C. J., says " If Buffam is to be viewed as an agent, deriving his authority from the choice of the company, his power must be considered to be limited by the terms of the appointment, and although the general administration of the affairs of the company was intrusted to him, we see no power given to him to appoint sub-agents ; nor can such power be implied, for a confidence is supposed to exist between principal and agent which is not communicated to sub-agents selected and appointed only by the agent."

In *Brewster* v. *Hobart*, 15 Pick. 302. *Wilde*, J., says " It is quite clear that where there is no assent of the principal, either express or implied, an agent or attorney cannot delegate his authority to a sub-agent, so as to authorize him to bind the principal, especially in matters which require any degree of *judgment* or *discretion*, however small."

Mr. *Paley* says, (Paley on Agency, 128,) " If, therefore,

an agent be appointed to sell, he cannot depute the power to a clerk or sub-agent, notwithstanding any usage of trade, unless by express assent of the principal." A similar doctrine is recognized by Lord *Eldon*, in *Coles* v. *Trecothick*, 9 Vesey, 234. So in Story on Agency, § 13, it is laid down that when one has a bare power or authority from another to do an act, he must execute it himself, and cannot delegate it to another.

The case of *Commercial Bank of Lake Erie* v. *Norton & Fox*, 1 Hill's Rep. 501, was assumpsit against the defendants, two of the partners of the firm of E. Norton & Co., as acceptors of certain bills of exchange. The acceptance was in form thus, " E. Norton & Co. per A. G. Cochrane," and was in Cochrane's handwriting. Henry Norton was the general agent of the firm of E. Norton & Co., having competent authority to accept the bills in their behalf ; and Cochrane was the bookkeeper of E. Norton & Co., and was directed by Henry Norton to accept the bills. *Cowen*, J., who delivered the opinion of the court, says, " Henry Norton was the factotum of the firm." . " But it is said he could not delegate the power to accept. This is not denied, nor did he do so. The bills came for acceptance, and having, as agent, made up his mind that they should be accepted, he directed Cochrane, the bookkeeper, to do the mechanical part, write the acceptance across the bill. He was the mere amanuensis. Had any thing like the trust which is in its nature personal to an agent, a discretion for instance, to accept what bills he pleased, been confided to Cochrane, his act would have been void. But to question it now, would be to deny that the general agent of a mercantile firm could retain a carpenter to make a box, or a cooper to make a cask. The books go on the question whether the delegation be of a discretion." *Blore* v. *Sutton*, 3 Merivale, 237, is a case holding a doctrine of a stricter character. There the clerk of the agent put his own initials to the memorandum by direction of the agent ; and it was held insufficient to bind the principal.

But it is not necessary to inquire or decide, in the present case, whether an agent can delegate the power to perform a mere ministerial act.

Gillis *v.* Bailey.

The power to lease, involved the exercise of judgment and discretion. · According to the uniform current of the authorities it would seem quite clear, that an agent cannot delegate to another any portion of his power requiring the exercise of discretion or judgment, unless, in the power conferred upon the agent is involved the power of substitution by the agent, in express terms, or at least by necessary implication. But no such power of substitution was conferred upon the directors in the present case. The by-laws, to be sure, allowed " the exercise of a general superintendence and control by the directors, or a majority of them, over the affairs of the corporation." But this did not include the right to confer authority upon others, to exercise the same power. Here was clearly no express power of substitution given to the directors. And there was nothing in the nature of the authority to be exercised, which could render the aid of others necessary. No power of substitution is therefore to be implied. The power was conferred upon the directors, and upon them alone, by the terms of the by-laws; " to sell lands and tenements, &c., belonging to the corporation, upon such terms and conditions as they may deem advantageous to the corporation." The exercise of the power is put expressly upon the discretion of the directors. From this language, no power of substitution can be implied. The directors, then, were the agents of the corporation, upon whom the power to lease the lands of the corporation was conferred ; and no power, either express or implied, is found to delegate that authority to others ; and the power to be exercised involved necessarily the exercise of judgment and discretion. We are, therefore, upon the whole, clearly of the opinion, that the power of attorney executed by the treasurer of the corporation, and approved by five of the directors, conferred no authority upon Read to lease the premises in question to the plaintiff; that the exception, taken at the trial, to the authority of Read in this particular, should have been sustained; and that the Court erred in overruling it.

The judgment of the Court, therefore, is, that the verdict be set aside, and

*A new trial granted.*