Lee, J.
It is a maxim of great ■ antiquity in the English law, that no time runs against 'the .crown, or as it is expressed in the early-law writers, “ nullum, tempus occurrit regi.” Magdalen College Case, 11 Coke 68-74; S. C. 1 Roll. R. 151; Bracton, lib. 2, ch. 5, § 7; Britton, ch. 18, p. 29; 8 Bac. Abr. “ Prerogative,” E, p. 95; 7 Comy. Dig. “Prerog.” D, 86, p. 90. And it may be laid down as .a safe proposition, that no statute of limitations has been held to apply to suits by the crown, unless there has been an express provision including it. United States v. Hoar, 2 Mason’s R. 311.
The reason sometimes assigned why no laches shall be imputed to the king, is, that he is continually *577 busied for the public good, and has not leisure to assert his right within the period limited to subjects. Coke Litt. 90; 1 Black. Com- 247. A better is, the great public policy of preserving public rights and property from damage and loss through the negligence of public officers. Sheffeild v. Ratcliffe, Hob. R. 347; United States v. Hoar, 2 Mason’s R. 311; The People v. Gilbert, 18 John. R. 227; United States v. Kirkpatrick, 9 Wheat. R. 720-735. This reason certainly is equally, if not more, cogent in a representative government, where the power of the people is delegated to others, and must be exercised by these if exercised at all; and accordingly the principle is held to have been transferred to the sovereign people of this country when they succeeded to the rights of the king of Great Britain, and formed independent governments within the respective states. Inhab. of Stoughton v. Baker, 4 Mass. R. 522; The People v. Gilbert, 18 John. R. 227; Kemp v. Commonwealth, 1 Hen. & Munf. 85; Nimmo's ex’or v. Commonwealth, 4 Hen. & Munf. 57; Chiles v. Calk, 4 Bibb’s R. 554; Commonwealth v. McGowan, Ibid. 62. And though it has been sometimes called a prerogative right, it is in fact nothing more than an exception or reservation introduced for the public benefit, and equally applicable to all governments. Per Story, J. United States v. Hoar, ubi supra.
Independently of the particular reason above referred to, another has been advanced, founded on the presumed legislative intention. In general, legislative acts are intended to regulate the acts and rights of citizens; and it is a rule of construction not to embrace the government or effect its rights by the general rules of a statute, unless it be expressly and in terms included or by necessary and unavoidable implication. United States v. Hoar, ubi supra; People v. Gilbert, 18 John. R. 227.
*578 This exemption from the imputation of laches and ^ie operation of the statutes of limitation is not con-to debts and demands of a personal nature in favor sovereign, but extends also to lands and real estate held jure corona. Bracton, lib. 3, ch. 3, p. 103; Lee v. Norris, Cro. Eliz. 331; Chiles v. Calk, 4 Bibb’s R. 554; Johnston v. Irwin, 3 Serg. & Raw. R. 291. And accordingly, we find it treated as a settled maxim, that there can be no adversary possession of lands against the commonwealth, and that no time will bar her recovery, or. that, of her. grantee, against the party, holding, except, only imthe solitary case specially provided* by. statute, of a settlement of thirty years accompanied-.by payment of taxes?-or quit rents within that time. Gore v. Lawson, 8 Leigh 458; Tichanal v. Roe, 2 Rob. R. 288; Shanks v. Lancaster, 5 Gratt. 110. See also Ward v. Bartholomew, 6 Pick. R. 409.
But though the general rule will not be controverted, it may be said that it will not apply in the case of a forfeiture of lands to the commonwealth for failure of the owner to comply with her revenue laws, where an adversary possession had been commenced against the former owner before the forfeiture.
It is true, in a. certain sense, the commonwealth takes the land on. forfeiture in the same plight and condition in which it stood at the time of the forfeiture. The commonwealth takes the estate and title of the former owner, and no other. If at the time of the forfeiture his title were absolutely bound by the adversary possession of another,.it may be no title would vest in the commonwealth,,unless it were saved by the existence of her lien on the land for arrears of taxes; a point upon which I express no opinion. But if when the forfeiture, accrued the right of entry still remained to the owner, though an adversary possession had been commenced, the possession as to her *579 must lose its adversary character, and she must take and hold the subject with the same rights, privileges and immunities which pertain to any other lands by her in her demesne. I can perceive no good reason why any discrimination should be made, or why she should hold forfeited lands upon different principles and with diminished privileges from those applying to other subjects of similar character. Certainly, the reason for exemption from the effects of laches and inattention on the part of her public officers, is as cogent in such a case as tin .any other whatever. Nor have I seen any case, so far as my investigation has extended, which warrants-any .such distinction. The case of Hall v. Gittings, 2 Har. & John. 112, fully supports the -contrary doctrine. In ’.that case certain lands, which had escheated to the lord proprietary (under grant of the English crown) were confiscated to and vested in the state of Maryland under the act of October 1780, ch. 49, without office found or actual entry. Prior to the confiscation, .adversary possession of the .land had been taken and .was held against the proprietary. Yet it was held that upon.the passage of the act of confiscation, such possession. eeased to operate against, the state during the time the title was vested in her, and . that the defendant could not, upon the strength of such possession, resist the right of her subsequent grantee to recover. See also Harlock v. Jackson, 1 Constit. R. (S. C.) 135.
The opinion of the court in United States v. White, 2 Hill’s N. Y. R. 59, might seem to countenance a different doctrine. It was an action on a promissory note by plaintiffs as endorsees, against defendant as maker. The defendant pleaded actio non accrevit infra, &c. and other pleas; to all of which the plaintiffs demurred. The court said that if the statute had commenced to run before the endorsement, it would continue to run afterwards even against .the plaintiffs, and *580 their privilege would not apply; but upon the pleadings, it held that the plaintiffs became the holders of note before its maturity; and judgment for plainjjere then the question did not arise, and what was saj¿ \,j the eourt was obiter, merely. And it might too not be difficult to show a marked difference in reference to the effect of the statute between the case of a state taking a note by contract of endorsement, voluntarily, and that of acquiring title to real estate by aet of law under a forfeiture. The case of United States v. Buford, 3 Peters’ R. 12, was assumpsit,for moneys claimed from the defendant upon a receipt, in which he had promised to account for the same. The plaintiff claimed an assignment to the United States from the original contracting party; more - than five years had elapsed after the cause of aetion arose before the assignment was made, and the statute of limitations was pleaded. The Supreme court held that as the bar of the statute was complete before the assignment, the plaintiffs eould not recover; but it appears to be conceded that if the statute had not run its course when the assignment was made, the character of the claim might be so changed that it would be thereafter withdrawn from its operation.
I think, therefore, that as the right of entry of Girond had not been barred at the time of the forfeiture, if that were even fixed at the time assumed by the court, the possession of the defendant after that time ceased to be adversary, and became, as said in Harlock v. Jackson, ubi supra, the joint possession of himself and the other members of the community; and that the court erred in its opinion that the statute continued to run against the commonwealth. And this view I consider is fully sustained by the opinion of this court in the cases of Staats v. Board, 10 Gratt. 400, and Hale v. Branscum, 10 Gratt. 418.
According to the decisions of this court in the cases *581 just referred to, aad also that in the cases of Wild v. Serpell, 10 Gratt. 405, and Smith v. Chapman, Id. 445, the Circuit court also erred in its opinion as to the time at whieh the forfeiture under the Girond grant occurred or became complete. It appears to have proceeded on the notion that some inquest of office, or deeree or other proceeding should have been had in «order to declare and perfect the forfeiture. Nothing of the kind was necessary. The act of the 27th of February 1835, Sess. Acts, p. 11, declaring that lands whieh had been omitted from the books of the commissioners of the revenue should be forfeited unless the owners should cause the same to be entered and charged with taxes, and should pay the same except sueh as might be released by law, was intended by its own feree and energy to render the forfeiture absolute «and complete, without the necessity of any inquisition, judicial proceeding or finding of any kind, in order to consummate it. It was perfectly within the competence of the legislature to declare such forfeit-tare and divest the title by the mere operation of the act itself, and the whole legislation upon the subject of delinquent and forfeited lands, plainly manifests the intention to exercise its power in this form. By the fourth section of the act of March 6, 1827, Supp. Rev. Code 1819, p. 314, the title to lands vested in the literary fund for nonpayment of taxes and not redeemed, is transferred ia certain cases to those who may have settled and improved them under title claimed under a grant from the commonwealth. The language of the act is u that all right, title, &e.” (of the literary fund) “ shall be and the same is hereby relinquished to and vested in such person, &e.” By the seeond section of the act of April 1, 1831, Supp. Rev. Code, p. 345, certain delinquent lands and lands sold and theretofore redeemed by the executive under a previous act, which should not be redeemed by a *582 given day, were declared to be forfeited. The lanS'ua8'e °f the act is, “ shall be from and after (the day absolutely forfeited, &c.;”—“ and such lands, ]3e thenceforth and the same are hereby absolately vested in” the literary fund. The eigth, ninth and tenth sections of the same act provide for transferring the title to certain forfeited and escheated lands to persons in possession under other grants in certain cases; and'by'the eleventh section, a mode is provided by which dhe occupant is to obtain a decree on petition to the -proper court, investing him with the title. But bydhe- act of March 10th, 1832, this proceeding is dispensed with, and-the title immediately vested by the operation of the act. Its language is, “ all such lands, &c. shall be and the same are hereby declared to be absolutely vested in such holders, and as to those not yet forfeited, immediately after the forfeiture, &c.; and such holder in any action brought against him for the recovery of such land, shall have the full benefit of the commonwealth’s right hereby intended to be transferred to him.” ' The act ©f February 1835, in similar language, forfeits omitted "lands, if not assessed and the taxes paid, after the 1st of July 1836-;-and the'title thus .vested in the commonwealth is transferred to and absolutely vested in any person in possession claiming bona fide -under a grant bearing date previous to the 1st of April 1831.
All these provisions, and those of similar character in other acts, would seem to be utterly incompatible with the idea of an inquest of office, or any such proceeding, being necessary to consummate or give effect to the forfeiture.
I think there is little aid to be derived in construing these statutes from the common law doctrines in relation to forfeiture of land for crimes to the crown. These acts were designed to remedy certain evils for which prompt, summary and decisive measures were *583 indispensable. They were intended to perform the office and perfect the remedy proposed by their own mere force and operation. Where by statute a feiture of goods is created, the property, by the forfeiture, is divested out of the owner without any proceeding on the part of the state, and becomes vested in the government. Coke Litt. 128; Wilkins v. Despard, 5 T. R. 112; Fontaine v. Phoenix Ins. Co. 10 John. R. 58; Kennedy v. Strong, 14 John. R. 131. Where it is of lands, the same rule should prevail if such is the plain intention of the legislature. See Barbour v. Nelson, 1 Litt. R. 60. Even at common law, though lands or goods forfeited for treason or felony, could net be seized into the king’s hands, nor granted by him to another, before attainder, yet the forfeiture of the lands relates to the time, of the offence, to avoid all subsequent sales - and- incumbrances; otherwise as to goods. Coke Litt. 390 b; Hale’s Pl. C. 264; 4 Com. Dig. “Forfeiture,” (B 6,) p. 412; Ibid. p. 413., and note u; 4 Bac. Abr. “ Forfeiture,” D. p. 346.
By the act of February 9th, 1814, 2- Rev. Code 1819, p. 545, all previous laws forfeiting omitted lands were repealed, and all previous forfeitures- of the same released; and as no provision was made subsequently in relation to such lands until the passage of. the act of February 1835, no forfeiture could occur previous to that time. By the act of March 1836, Sess. Acts, p. 7, further time was. allowed till the 1st of November 1836, for the owners of omitted lands to enter the same on the books, and -have them charged with taxes, and to pay such taxes, as prescribed by the second section of the act of February 1835. But on failure of such owners to perform this duty, the forfeiture became absolute and consummate from and after the 1st of November 1836, and the provisions of subsequent laws giving time for redemption did not release *584 the forfeiture which had accrued, except in such eases where the owner availed himself of the opportuof redemption thus afforded.
jn £bis case, therefore, the forfeiture accrued and became complete on the 1st of November 1836, and the Circuit court erred in not so instructing the jury, instead of fixing it at the date of the decree for the sale, or decree of forfeiture, as it is styled in the bill of exceptions.
I think the Circuit court committed no error in instructing the jury, that as the defendants’ grant bore date on the 1st of April 1841, he was not in a condition to take the benefit of the act of March 1841, though in other respects he could show himself to be within the provisions of that act, because it only applied to grants issued previous to the 1st of April 1841; and that the purchaser at the commissioner’s sale acquired all the right vested in the commonwealth by the forfeiture of the Girond title, and that his deed from the commissioner related back to the sale of the land. But I do not perceive why the court refused to instruct the jury, that if the land embraced by the defendant’s grant had been before granted by the commonwealth to Girond, nothing passed to the defendant under his grant. The court very correctly refused to exclude it from the jury, because in doing so it would have undertaken to decide that the boundaries of the grant to Girond did in fact embrace the land covered iby the defendant’s grant; a matter which it was the province of the jury to determine; but if the jury •should be of that opinion, the court should have instructed them that the commonwealth’s title passed* by the elder grant to Girond; and there remained nothing which could pass by the junior grant to the defendant. That before the grant to the defendant issued, the title under the Girond grant had been forfeited to the commonwealth, will give no strength to the defen *585 dant’s grant; because it was for land entered and surveyed by him as waste and unappropriated land, and there was no act then in force authorizing lands to be entered as: waste and unappropriated; the act which at one time had authorized it, having been repealed. And in the absence of such a statutory provision, no title- could be acquired to such lands by entry and survey, and a patent obtained for them would be merely void. The law pointed out the mode by which the title to such lands- was to be passed, and that was by sale and conveyance by the commissioner of forfeited lands, and any attempt to acquire title to them in any other mode would be utterly ineffectual. When a conveyance should be made in the mode prescribed by law, it would pass the forfeited title and overreach any intermediate grant founded upon an entry and survey; such grant not precluding the commonwealth from making a deed through her commissioner in the appointed mode, which would be effectual to pass the title vested in her by the forfeiture. Wilcox v. Calloway, 1 Wash. 38; Whittington v. Christian, 2 Rand. 353.
In the refusal of the court to give the first and fourth instructions asked for by the plaintiff, in the terms suggested by him, there was no error of which he can complain, because the court did give in substance, if not in the same language, all and so much of said instructions as he could properly require; the portion of the first instruction which seems to have been omitted being so obscurely expressed as to leave in doubt the meaning intended; and it was for that cause, if no other, properly omitted.
With regard to the third instruction: From what I have already said, it will appear that the court erred in refusing to give so much of it as informed the jury that the statute of limitations did not run against the commonwealth upon the facts in this case. Whether, *586 however the statute only commenced to run against plaintiff from the time of the sale by the commisin November 1841, as the plaintiff contended, or Aether the time for which the defendant held the land before the forfeiture accrued to the commonwealth, is to be added to that for which he held it after the commissioner’s sale and up to the institution of the suit, with a view to make out a bar under the statute, is a question which will require very grave consideration when it shall be necessary to decide it. In this case no such necessity exists, because giving to the defendant the benefit of his possession from the time he got the title bond from Hector under which he claimed title, until the forfeiture took place, (and he can claim nothing more because he wholly fails to connect himself in any way with the anterior possession held by Smith,) and adding to it the whole period from the sale by the commissioner in November 1841 down to the institution of the suit, it will not amount to seven years’ possession, which is necessaiy to constitute the statutory bar. I leave this, therefore, without further comment.
Nor the reasons I have thus endeavored to assign, I am of opinion to reverse the judgment, and to remand the cause for a new trial.
The other judges concurred in the .opinion of IjEE, J.
Judgment reversed.