## COMMONWEALTH *vs.* ALLEN LOOK & others.

Upon an indictment for taking smelt at a time forbidden by the St. of 1869, *c.* 384, § 31, which provides that the statute shall not apply to any person catching smelt " while fishing for herring or alewives," the defendant may be convicted if he intended to catch smelt, although he also intended to catch herring, and the catching of herring was lawful.

The St. of 1869, *c.* 384, § 31, forbidding the taking of certain fish at their spawning seasons, is binding on riparian proprietors of unnavigable streams, and is constitutional.

The proper means of recovering the penalty for the illegal taking of fish under the St. of 1869, *c.* 384, § 31, is by indictment; and the commission as on inland fisheries need not be the prosecutors.

INDICTMENT on the St. of 1869, *c.* 384, § 31, against Allen Look, George W. Manter, William P. Luce and Elishab A. Athearn, charging that they, after March 15, 1870, and before June 1, 1870, to wit, on March 16, 1870, at Tisbury in the county of Dukes County, did unlawfully and wilfully take and catch 5000 smelt in Tyesquin Brook by means of a seine, they not being then fishing for herring or alewives. The grand jury presented that Hariph M. Smith was the person who made the complaint against the defendants.

At the trial in the superior court for Dukes County, the defendants, before the jury were empanelled, moved to quash the indictment, because the proper remedy under the statute was not by indictment; because the defendants had a right to catch smelt with a seine in Dukes County on Wednesday, March 16, 1870; and because it did not appear that the indictment was prosecuted by the commissioners on inland fisheries; but *Putnam*, J., overruled the motion.

The Commonwealth introduced evidence tending to show "that the defendants, on the morning of Wednesday, March 16, 1870, set a seine in Tyesquin Brook, swept it in the usual manner of setting and sweeping seines for fish, and caught several thousand smelt and about a dozen herring; that this brook was not a place where persons usually fished for herring at that season of the year, although they were abundant there in the months of May and June; that the seine was set at a time of day when smelt would be expected, according to their habit at that place; that there was preparation to pack up and send to market the smelt caught; that they were packed in barrels as soon as they were caught, and sent off to market, in a wagon which came for them in consequence of some previous arrangement; and that no disposition was made of the few herring that were caught."

The defendants testified that they were fishing for herring or alewives; and introduced evidence tending to show that forty or fifty herring were caught in the same seine, at the same place, while sweeping in the same manner, on the previous morning, and that at the same time also a large number of smelt were caught. On the question whether herring had been caught there in former years, so early in the season, in any considerable quantities, the evidence was conflicting.

Upon the foregoing evidence, the Commonwealth contended that the pretence of fishing for herring was only a pretence for evading the statute.

The defendants introduced evidence tending to show that they were fishing under the authority and direction of the riparian proprietors of the brook, which was an unnavigable stream, and contended that, if that fact was established, they had a right so to

do, notwithstanding the statute ; but the judge ruled that the fact would be no defence. There was no evidence " that such proprietors in 'giving such authority brought themselves within any of the provisions of the St. of 1869, c. 384, stating the rights of riparian proprietors."

The defendants requested the judge to instruct the jury, " that the intent and meaning of the proviso in § 31, interpreted in connection with the statutes prescribing the time when it was lawful to catch herring or alewives, was to allow the use of any seine or net, by any person fishing therewith in these waters, at such periods, and as allowed by said statute : ,and that the intent with which they were used, whether express or implied, was immaterial." But the judge declined so to rule, and instructed them that the question of intent was a question of fact for them to decide, and called their attention to the evidence which bore on the question of intent ; and further instructed them that, if upon the evidence they were satisfied that the defendants intended to catch smelt, and were fishing for smelt when sweeping their seine, they would be liable.

The defendants also requested the judge to instruct the jury, " that the defendants had a legal right to sweep a seine in the waters mentioned, on March 16, 1870, it being Wednesday, for the purpose of fishing for herring or alewives ; that if herring or alewives were actually then and there caught, the legal presumption was that they intended no unlawful act, and the burden of proof was on the Commonwealth to show that they did not intend to catch herring or alewives ; and that, if the defendants intended in good faith to fish for herring, even if they also intended to catch smelt by the same act, such intent did not render their acts unlawful, whether they actually caught herring or not." But the judge refused this request also, and instructed the jury " that the legal presumption would be as stated, in the absence of any evidence to the contrary ; that the burden was on the Commonwealth to show that the defendants did not intend to catch herring or alewives ; that the purpose or intent to fish for smelt at the same fishing would make the act illegal, so far as the fishing for smelt was concerned ; and that to make it legal it must be a case where

their purpose and intent was to catch herring, and where the taking of smelt was an incidental matter."

The defendants also asked the judge to rule that, admitting all the facts which the Commonwealth claimed to be proved to be true, the indictment could not be maintained; but the judge refused so to do. The jury returned a verdict of guilty, and the defendants alleged exceptions. The provisions of the St. of 1869, *c.* 384, which are material to the case, are printed in the margin.*

*J. Brown & M. Williams, Jr.,* for the defendants. 1. The instructions requested as to the defendants' intent were correct, and should have been given.

2. The St. of 1869, *c.* 384, § 31, was not intended to cut off the right of riparian owners upon unnavigable streams to take fish upon their own land at any season. *Commonwealth* v. *Bailey,* 13 Allen, 541. *Commonwealth* v. *Chapin,* 5 Pick. 199, 202.

---

* " SECTION 24. Whoever takes salmon, shad or alewives in any of the waters of this Commonwealth, except the Connecticut, Taunton Great, Nemasket and Merrimack rivers, or their tributaries, in any other manner than by naturally or artificially baited hook and hand-line, on any day of the week but Monday, Wednesday, Friday and Saturday, shall forfeit for each offence the penalties prescribed for taking these species of fish at seasons prohibited by law."

" SECTION 31. Whoever takes or catches any smelts or white perch, in any of the waters of this Commonwealth, in any other manner than by naturally or artificially baited hooks and hand-lines, between the fifteenth day of March and the first day of June in each year, or takes or catches any smelts, with a net of any kind, on any known spawning ground within said Commonwealth, shall forfeit for each smelt, so taken or caught, the sum of twenty-five cents; provided, that nothing herein contained shall apply to any person catching smelts in any seine or net in Taunton Great River, or in Dukes County while fishing for herring or alewives, or to the lessees of the towns of Yarmouth and Dennis while fishing for perch or alewives in Bass River or its tributaries, or to any person lawfully fishing for perch, herring or alewives in either branch of Westport River." [This section was amended by the St. of 1872, *c.* 290, and repealed by the St. of 1873, *c.* 211, § 2. See also the Sts. of 1873, *c.* 211, § 1, and *c.* 364.]

" SECTION 33. One half of the money recovered as a penalty, in any case arising under the laws relating to inland fisheries, shall be paid to the person making the complaint in the case in which the same is recovered, and the remainder to the Commonwealth."

*Waters* v. *Lilley*, 4 Pick. 145, 147. *Proctor* v. *Wells*, 103 Mass. 216. St. 1869, *c.* 384, § 20.

3. If § 31 does apply to unnavigable streams, it is unconstitutional. It would deprive riparian owners of their property without compensation, by prohibiting the capture of smelt at the very season when they frequent such streams. *Commonwealth* v. *Essex Co.* 13 Gray, 239, 251.

4. The words " while fishing for herring or alewives," in § 31, do not refer to the inward mental or proclaimed intent of persons fishing with seines, but mean fishing with seines at times when by § 24 it is lawful to fish for alewives with seines.

5. The indictment should have been prosecuted by the commissioners on inland fisheries or their deputy ; § 3 directs that each of them " may personally, or by deputy, enforce all laws relating to inland fisheries."

*J. C. Davis*, Assistant Attorney General, ( *C. Allen*, Attorney General, with him,) for the Commonwealth.

AMES, J. As it was not denied that the smelt were taken in a seine, during the forbidden period, by the defendants, it became a very material question whether they, at the time of such taking, were in reality fishing for herring or alewives, instead of smelt. St. 1869, *c.* 384, § 31. The defendants have no ground of complaint against the instructions of the court upon the subject of their intent in using the seine. The rule laid down by the court, as to the legal presumption of the absence of any unlawful intent, and as to the burden of proof, was also correct, and as favorable to the defendants as they had a right to ask.

It is true that, in the case of an unnavigable stream, the owners of the soil adjoining and under the stream are also owners of the fishery, within the limits of their own land. This right of fishery may be, however, to some extent qualified by legislation. The legislature has the right to prevent the extermination of migratory fish, (as well as of useful birds and other animals,) by forbidding the taking of them at all times of the year when such taking would interfere with their breeding and multiplication. *Commonwealth* v. *Chapin*, 5 Pick. 199. *Vinton* v. *Welsh*, 9 Pick. 87. Such has been the ancient and constant course of legislation

in this Commonwealth. *Stoughton* v. *Baker*, 4 Mass. 522. *Commonwealth* v. *Essex Co.* 13 Gray, 239. We cannot doubt the constitutionality of the statute on which this indictment is founded, and no license from the riparian proprietors would be of any avail as a defence to the parties accused. *Commissioners on Inland Fisheries* v. *Holyoke Water Power Co.* 104 Mass. 446, 450.

The motion to quash we consider equally without foundation. We have already decided that the proper remedy is by indictment. *Smith* v. *Look, ante,* 139. *Commonwealth* v. *Essex Co.* 13 Gray, 239. And it is immaterial that part of the penalty goes to the informer. The twenty-fourth section of the statute does not allow fishing for smelt with a seine, within the prohibited period, on Wednesdays, as the motion implies. Nor does the statute require that the commissioners on inland fisheries should be the prosecutors. *Exceptions overruled.*