JOSHUA COLE & others *vs.* INHABITANTS OF EASTHAM.

Barnstable.    March 17. — May 15, 1882.    ENDICOTT & C. ALLEN, JJ., absent.

The St. of 1879, c. 45, authorized a town to make the necessary improvements for the preservation and taking of alewives in a great pond and the waters connected therewith; enacted that the town should pay "all damages that shall be sustained in any way by any persons in their property, in carrying into effect this act;" and provided that any fishery so created should be the property of the town. *Held,* that a person whose land on both sides of a non-navigable stream, connecting with the pond, was taken under this act, could recover compensation only for the land taken, and not for the value of the fishery to him as a riparian owner.

PETITION for the assessment of damages for land taken under the St. of 1879, c. 45.*    Trial in the Superior Court, before

---

* This act is as follows :

" Section 1. The town of Eastham is hereby authorized to make the necessary improvements for the preservation and taking of alewives in the Great Pond, so called, in the town of Eastham and the waters connected therewith and the outlet therefrom to the sea, and may take land and do all acts necessary for the purpose of establishing, protecting and regulating an alewife fishery in said waters.

" Section 2. The said town of Eastham shall be liable to pay all damages that shall be sustained in any way by any persons in their property, in carrying into effect this act. If any person sustaining damage as aforesaid shall not agree with the selectmen of the town upon the amount of damage to be

*Brigham*, C. J., who reported the case for the determination of this court, in substance as follows:

It appeared in evidence that the petitioners were owners of a lot of land extending on both sides of a non-navigable stream, through which alewives were accustomed to run; that the respondent town, for the purposes and in pursuance of the St. of 1879, *c.* 45, took possession of said stream and of the land on both sides of the stream.; and that the petitioners claimed the right of an exclusive fishery in the stream by virtue of their riparian ownership.

The jury, in answer to questions submitted to them, found that the value of the land taken, excluding the value of the fishery, was $166.66, and, including the fishery, was $825.

The judge then ruled, against the petitioners' exception, that their right to the fishery as riparian owners was not an element of damage for which the respondent was liable under the St. of 1879, *c.* 45; and directed the jury to return a verdict for the petitioners in the sum of $166.66, and ordered judgment accordingly.

If the ruling was right, judgment was to stand for the amount of the verdict; otherwise, judgment for the sum of $825.

*H. P. Harriman*, for the petitioners. 1. At the time of the passage of the St. of 1879, *c.* 45, the petitioners owned land on both sides of a non-navigable stream, and had the exclusive right to take fish therein. Such a right has been recognized as private property in many cases: *Nickerson* v. *Brackett*, 10 Mass. 212. *Waters* v.' *Lilley*, 4 Pick. 145. *Commonwealth* v. *Chapin*, 5 Pick. 199. *Vinton* v. *Welsh*, 9 Pick. 87. *McFarlin* v. *Essex*

---

paid therefor, he may have his damage assessed and paid in the manner provided by law in respect to land taken for highways.

" Section 3. Any fishery so created shall be deemed to be the property of said town of Eastham, and said town may make any proper regulations concerning the same, and may lease such fishery for a period not exceeding five years, upon such terms as may be agreed upon between said town and the lessees of the same.

" Section 4. No persons without the permission of said town or of the lessees of said fishery shall take, kill or haul on shore any alewives in the fishery so created by the town."

Sections 5 and 6 relate to penalties for the violation of the provisions of the act, and to prosecutions for the same.

*Co.* 10 Cush. 304, 309. *Commonwealth* v. *Essex Co.* 13 Gray, 239, 251. Angell on Watercourses, §§ 61–70.

2. Although this right was subject to be regulated by the Legislature, and to be taken away, if required for the public good, yet it stands in no different position from other private property; for every man holds his property subject to regulation by the Legislature, and subject also to the right of the Legislature to deprive him of it, if required for the public good. While the Legislature may, in the exercise of its police power, regulate the use of private property, it cannot take such property and devote it to public uses, without compensating the owner therefor. Declaration of Rights, art. 10. *Cottrill* v. *Myrick*, 12 Maine, 222.

3. Section 2 of the act in question provides, in the most general terms, that the town "shall be liable to pay all damages that shall be sustained in any way by any persons in their property, in carrying into effect this act." Section 3 distinctly recognizes the right of fishery to be property, by declaring that any fishery created by the act "shall be deemed to be the property of said town." The question therefore does not arise in this case, whether the Legislature could take the property of the petitioners, without providing compensation, and give it to the town, for the Legislature has provided for compensation, as it has previously done in similar cases. *McFarlin* v. *Essex Co.* and *Commonwealth* v. *Essex Co. ubi supra.*

*G. W. Park & G. F. Piper*, for the respondent.

DEVENS, J. By the common law the exclusive right to a fishery in a stream not navigable was in the proprietors of the banks, who, owning the bed of the stream *ad filum aquæ*, thus owned the land where such fishery was carried on. It was a right of taking the fish only, and did not involve the right to prevent their passage to the portion of the stream which lay above such fishery. But this rule has been modified in this Commonwealth by successive legislative acts from the earliest settlement of the country, passed under the two governments of the Plymouth and Massachusetts Bay Colonies, as well as under the Province and our present form of government. There was much jealousy on the subject of exclusive individual privileges in fisheries, and much desire to protect the public in the

enjoyment of such privileges. The laws of Plymouth Colony
provided that "fishing, fowling and hunting be free," while they
also provided that the General Court might make a grant to one
who desired to improve and stock a place of a private fishery.
Such was the law when the town of Eastham, which was a part
of Plymouth Colony, was settled in 1646, and also when the
two Colonies were united in the Province of Massachusetts Bay.
Plymouth Col. Laws, 29, 34, 282.  Anc. Chart. 213, 229.  Const.
Mass. *c.* 6, art. 6.

It was especially deemed for the public good that certain fish-
eries, like those for salmon, shad and alewives, which furnished
an abundant supply of healthful and agreeable food, should be
subjected to public control and dealt with as public property
whenever the Legislature should see fit to interpose.  "From
the first settlement of the State," says Mr. Dane, "men have
understood that they have held these non-navigable rivers and
streams, subject to this legislative control, and, therefore, it is,
as it were, a part of our common law." 2 Dane Ab. *c.* 68,
art. 6, § 1.  The paramount claims of the public are thus ne-
cessarily implied in all grants of the lands abutting on these
streams, and the rights of citizens of this Commonwealth in
the fisheries are to be determined according to the effect of this
ancient and long-established system of legislation, rather than
by the principles of the common law.  *Nickerson* v. *Brackett,*
10 Mass. 212.  *Commonwealth* v. *Chapin,* 5 Pick. 199.  *Vinton*
v. *Welsh,* 9 Pick. 87.  Angell on Watercourses, § 85.

The diligence of the counsel for the respondent has enabled
them to furnish a long list of acts passed by the Provincial
Legislature and that of the Commonwealth, by which the full
control over and property in the alewive fisheries within their
limits has been transferred to the towns in which they were
located, not only as to the mode in which the fishery shall be
pursued, but as to the persons by whom they shall be enjoyed.
These acts are very various in form, but all treat these fisheries
as properties belonging to the Colony, Province or State, which
the Legislature may confer upon the town, on such terms as it
deems proper for the interest of the public, and which may be
managed by the towns or their authorities as they see fit, sub-
ject to the regulations made.  The days of taking the fish are

sometimes prescribed by the Legislature and sometimes left to the town. These acts provide sometimes for the taking of fish by all the inhabitants, for the sale of this right, for the distribution of the fish taken among the inhabitants, or for the price at which the fish shall be sold to them; also for gratuitous distribution to those who are judged by the town or the selectmen too poor to pay. They provide sometimes for the sale of the right for money, with authority to the town to dispose of the money by vote, and, where more than one town is interested in the same fishery, for the proportions in which they shall divide the money. Sales of the fish to others than inhabitants of the town are forbidden. Penalties are imposed for violations of the regulations made by the Legislature, or those which the towns may make. No exercise of authority over property could be more complete than that which is exhibited in these assertions of the public right. We cite a few of these acts only, as they are very numerous. Prov. St. 1754–5 (28 Geo. II.) *c.* 31; 3 Prov. Laws (State ed.) 809. Prov. Sts. 1770–1 (11 Geo. III.) *cc.* 3, 21; 1772–3 (13 Geo. III.) *c.* 48; 1773–4 (14 Geo. III.) *c.* 29; 5 Prov. Laws (State ed.)                          Sts. 1791, *cc.* 19, 51, 63; 1792, *c.* 76; 1795, *c.* 33; 1796, *c.* 83; 1798, *c.* 83; 1799, *c.* 76; 1801, *cc.* 31, 66. However these acts may vary, they all are alike in this, that no provision is made for indemnity from the towns (who are treated as representing the public right) to any riparian owners, and their fishing privileges are treated always as subordinate to it.

It is true that those persons authorized to construct dams across streams are so under the implied obligation to provide sufficient sluices and fishways for the passage of fish, and that a grant made by the Legislature to erect a dam across a river is to be construed as under the implied condition to keep open fishways for the benefit of riparian owners of fisheries as well as of towns, unless such implication is excluded by an express provision. *Stoughton* v. *Baker,* 4 Mass. 522.

Where dams have been authorized by the Legislature, even when fishways have been provided for therein, as these might prove but partially sufficient, the riparian owners of fishing rights above have also been allowed to recover damages against the owners of the dams. *McFarlin* v. *Essex Co.* 10 Cush. 304.

*Commonwealth* v. *Essex Co.* 13 Gray, 239. *Commissioners on Inland Fisheries* v. *Holyoke Water Power Co.* 104 Mass. 446, 453.

As against all others than the public, the riparian owners of these fishing privileges have the rights which belong to private property. When these rights are taken away or diminished for the benefit of those engaged in a private enterprise for their own profit, although deemed by the Legislature so much for the public advantage that they should be allowed by the right of eminent domain to take private property, they have been permitted to do so only upon the condition of providing suitable compensation. In such cases, the Legislature has not invested them completely with the public right, subject to which the riparian owners hold their fishing privileges, and which by long usage it has been accustomed to confide to towns in the interest of the public for the purpose of controlling the fishery within their limits and receiving its emoluments.

The petitioners further contend that, whether the Legislature could or could not take the right of fishery, which the petitioners had in a non-navigable stream, for the benefit of the town of Eastham, without providing proper compensation therefor, the Legislature did provide such compensation, and that such is the true construction of the St. of 1879, *c.* 45. The object of the act, as seen by the first section, is to enable the town "to make the necessary improvements for the preservation and taking of alewives in the Great Pond, so called, in the town of Eastham and the waters connected therewith and the outlet therefrom to the sea;" and the town is authorized to "take land and do all acts necessary for the purpose of establishing, protecting and regulating an alewife fishery in said waters." As the second section requires the town to pay all damages sustained in any way by any persons in their property, and as the third section further enacts that "any fishery so created shall be deemed to be the property of said town of Eastham," it is argued that the fishery of the petitioners is recognized as property which before the taking belonged to them, and after the taking became the property of Eastham upon payment of compensation. But, in view of the law which exists and has long prevailed in this Commonwealth, it must be considered that the property for which the petitioners are to receive compensation is private property strictly, and not

such as is held by them subject to the exercise of a public right; and that the property obtained by the town of Eastham in the fishery is thus obtained in trust for the public, and in virtue of the public right to control through its agency an important fishery of the Commonwealth for the benefit of its citizens.

The verdict rendered for the petitioners for the smaller sum, which was the value of the land taken, was therefore correct.

*Judgment affirmed.*