## 𝔅𝔦𝔠𝔥𝔪𝔬𝔫𝔡.

### COMMONWEALTH V. H. M. SMITH, JR.

November 23, 1882.

1. STATUTES—*Construction.*—Act of January 14th, 1882, "to prevent frauds on the Commonwealth," &c., applies not to coupons detached from bonds issued under the funding bill of 1879, but only to coupons detached from bonds issued under the funding bill of 1871.
2. IDEM—*Idem.*—*Preamble* cannot enlarge the scope of a statute; and can be resorted to for explanation only when the language of the enacting clauses is obscure or ambiguous.
3. IDEM.—A tax-payer tendered coupon detached from bond issued under funding bill of 1879, in payment of his taxes to the collector, who refused to receive it.

HELD :

> The refusal was not justifiable under the act of January 14th, 1882, and the taxpayer was entitled to a *mandamus* to compel the collector to receive the coupon.

Writ of error to judgment of hustings court for the city of Richmond, awarding peremptory *mandamus* on petition of H. M. Smith, Jr., to compel S. C. Greenhow, treasurer, to receive from petitioner, in payment of his taxes, a coupon detached from a bond issued under the funding act of 1879. To the rule Greenhow made return, under the act of January 14th, 1882, "to prevent frauds on the Commonwealth," &c. Issue on demurrer to this return decided in favor of Smith and the *mandamus* awarded, whereupon a *supersedeas* was allowed the Commonwealth.

The facts and proceedings are fully stated in the opinion of the court.

*Attorney-General,* for the appellant.

1. Remedy by *mandamus* improper, because petitioner had his plain, adequate and complete remedy otherwise. *Page* v. *Clopton, Judge,* 30 Gratt. 415, and authorities there cited.

2. The Commonwealth being a party, the jurisdiction was exclusively in the circuit court of Richmond city, under ch. 166 and ch. 44, Code 1873.

3. The tax collector's refusal to receive the coupon was justifiable under act January, 1882, the preamble making that act expressly applicable to bonds issued under the funding bill of 1879.

4. The first section may apply only to bonds issued under act 1871, but the fourth section applies to all cases " where a tax-payer shall apply to any court of the Commonwealth for a *mandamus*," &c.

5. Petition contains no averment of ownership of the coupon in Smith, which is necessary to recovery in all cases.

*W. W. & Bev. T. Crump,* for the appellee.

ANDERSON, J., delivered the opinion of the court.

The defendant in error filed his petition in the hustings court for the city of Richmond, representing that he is a citizen and tax-payer of said city, and that he owes the State of Virginia fifteen dollars for taxes; and alleging that on June 2d, 1882, he tendered Samuel Greenhow, or S. G. Tinsley, his assistant, treasurer of said city, the officer appointed by law to receive said tax, a coupon for fifteen dollars cut from a bond of the Commonwealth of Virginia for $1,000, and uumbered 4506, issued under the act of assembly, approved March 28, 1879, entitled an act to provide a plan of settlement of the public debt, in payment of his said tax, but the said treasurer refused to receive said coupon in payment of said tax, and still refuses.

He sets out the coupon in his petition *verbatim et literatim,* and makes profert of the same, and avers that it is due and past maturity, and that by the contract of the State to receive it in payment of his taxes, he is entitled to pay his said tax with it, and is aggrieved and injured by the refusal of said treasurer so to receive it. And prays the Commonwealth's writ of *mandamus* to compel said Greenhow, treasurer, &c., to receive it in payment of his said tax. His said petition is verified by his affidavit.

Upon this petition the said Greenhow was summoned to appear before the court to show cause why a *mandamus* should not be awarded against him according to the prayer of the petitioner; to which he made the following return by S. G. Tinsley, assistant treasurer, "That he is ready to receive said coupons in payment of such taxes, debts and demands, as soon as they have been legally ascertained to be genuine, and the coupons which by law are actually receivable."

To this return and answer the plaintiff entered a general demurrer, in which the defendant joined. And upon the hearing thereof the court sustained the demurrer, and awarded the petitioner a preremptory *mandamus* against the defendant, commanding him to receive the petitioner's said coupon in payment of his said tax; to which order of the said hustings court, a writ of error was awarded by one of the judges of this court, which is the case now before us.

The refusal of Greenhow to receive the coupon, it is contended by the attorney-general, who appears in his defence, is warranted by the act of assembly approved January 14, 1882, entitled "An act to prevent frauds upon the Commonwealth and the holders of her securities, in the collection and disbursement of revenues."

It will be borne in mind that the coupon which was tendered by the plaintiff below in payment of his State tax, purported to be a coupon detached from a bond of the

Commonwealth, issued under the act of assembly approved March 28, 1879.

The first section of the act approved January 14, 1882, which is relied on by the attorney-general as authorizing and requiring the treasurer to refuse to receive the coupon tendered by the plaintiff below, in payment of his tax as aforesaid, provides that whenever any tax-payer, or his agent, shall tender to any person whose duty it is to collect or receive taxes, debts or demands due the Commonwealth, any papers or instruments in print, writing, or engraving, purporting to be coupons detached from bonds of the commonwealth, issued under the act of 1871, entitled an act to fund the public debt, in payment of any such taxes, debts and demands, the person to whom such papers are tendered shall receive the same, giving the party tendering a receipt, stating that he has received the same for the purpose of identification and verification. He is not authorized to receive the same in satisfaction and discharge of the tax, &c. But as appears from the next section, it is made peremptory on him, at the same time, to "require such tax-payer to pay his taxes in coin, legal tender notes, or national bank bills." And in case the tax-payer refuses to pay in money as aforesaid, this 2d section requires that the taxes due from him shall be collected as all other delinquent taxes are collected.

Section 3 prescribes what proceedings shall be had in case he delivers his coupons to the tax collector, and takes receipt for them, as provided in section 1, and pays his taxes as provided in first clause of section 2.

But he may refuse to deliver his coupons to the tax collector, except in discharge of his taxes, and refuse to pay his taxes in money, in which case it is provided by the latter clause of section 2, that they shall be collected as all other delinquent taxes are collected, and he would be necessitated to resort to his common-law remedy, by writ

of *mandamus,* to compel the collecting officer to receive his coupons, in fulfillment of the contract of the Commonwealth. And said section 4 was intended to provide the means whereby the State might be enabled successfully to resist the receipt of the coupons in payment of taxes in such case. And it provides that, " whenever any tax payer shall apply to any court in this Commonwealth for a *mandamus,* to compel any person authorized to receive or collect taxes, debts or demands due the Commonwealth, to receive coupons in payment thereof, it shall be the duty of such person to make return to said *mandamus,* that he is ready to receive said coupons in payment of such taxes, debts and demands, as soon as they have been legally ascertained to be genuine, and the coupons which by law are actually receivable." And this section then proceeds to prescribe what shall be done in that case.

The declared object of the act was to test the validity of the coupons detached from bonds which purported to be issued under the funding act of 1871, as described in § 1, and no others. For they are expressly specified, and no others are mentioned.

Section 1 designated the coupons, and provides that when any such are tendered, how they shall be treated. It designates only such as purport to be detached from bonds issued under the funding act of 1871.

Section 2 contemplates the case as presented in two different phases, accordingly as may be the action of the tax-payer—first, he may deliver his coupons, and pay his taxes in money, as required; or, secondly, he may refuse to deliver his coupons on the terms required, and refuse to pay his taxes in money, in which case the collector is to coerce their payment.

Section 3 provides what shall be the proceedure in the first case; and section 4, what it shall be in the second case, if the tax-payer obstructs the enforcement of the payment

of the tax in money, by applying to any court for a writ of *mandamus*, to compel the officer to receive payment in coupons. The third and fourth sections both relate to the coupons, which section 1 speaks of as being tendered. No others are designated, or spoken of as being tendered, and section 3 provides how they shall be treated in one case, and section 4 how they shall be treated in the other case; but both have reference to the same coupons, which section 1 describes and assumes will be tendered in payment of taxes, &c. No others are designated or referred to, and, consequently, coupons purporting to be detached from bonds issued under the act of 1879, do not fall within the purview of the act in question. Such is the coupon tendered by the tax-payer in this case, in payment of his State tax.

We think this is the plain and obvious construction of the enacting clauses of the act of January 14, 1882, before referred to. There is no ambiguity or obscurity in the language employed in said clauses; and if any other coupons than those described by section 1 were contemplated by section 4, they would be excluded from the provisions made by sections 1, 2, and 3, whilst the coupons described by section 1 would be embraced not only by those sections, but also by section 4. There is nothing in the language employed by the act which requires such a construction, and it is not reasonable that the framers of the act could have intended to make such a difference in the provisions as to the two classes of coupons.

But it is contended that the preamble shows that it was the intention of the legislature to include coupons which purported to be detached from bonds issued under the act of 28th of March, 1879, as well as under the act of 1871. It is perhaps a sufficient answer to say, that if such was the intention of the legislature, they did not execute such intention.

The preamble does state by way of *recital* (it is not an averment), that bonds purporting to have been issued by authority of the act of March 30, 1871, and under act of March 28, 1879, are in existence without authority of law; and whereas other such bonds are in existence, which are spurious, stolen, or forged, which bear coupons in the similitude of genuine coupons, &c.; and whereas the coupons from such spurious, stolen, or forged bonds are received in payment of taxes, &c.; and whereas genuine coupons from genuine bonds, after having been received in payment of taxes, &c., are fraudulently reissued and received more than once in such payments; and whereas such frauds on the rights of the holders of the aforesaid bonds, impairs the contract made by the Commonwealth with them, that the coupons thereon should be received in payment of all taxes, &c., and at the same time defrauds her out of her revenues : therefore, for the purpose of protecting the rights of said bondholders, and of enforcing the said contract between them and the Commonwealth, and of preventing frauds in the revenue of the same—

"1. Be it enacted by the general assembly of Virginia." The enacting clauses which follow, show what the legislature did towards executing said purposes; and they show, unequivocally and without ambiguity or obscurity, that it made provision only with regard to the coupons which purported to be detached from bonds issued under the act of 1871.

For some reasons, doubtless satisfactory to the legislature, or by unintentional omission, it only provided by its enactments for protection, as it professes, of the rights of the bondholders, and of enforcing the contract between them and the Commonwealth, and preventing frauds in the revenue of the same, in relation to coupons which were tendered in payment of taxes under the act of 1871, and made no allusion to any that might be tendered under the act of

1879. Why the legislature should have provided by the act only for the evils recited as existing under the act of 1871, when reference is made to them by way of recital in the preamble as existing under both acts, we do not know. The omission, whether intentional or unintentional, cannot be supplied by the courts. In *Denn* v. *Reid,* 10 Peters, 527, Mr. Justice McLean, speaking for the court, said : " We are unable to say why the benefits of this statute were given to those who held under deeds proved by the subscribing witnesses, and withheld from those whose deeds were proved by the acknowledgment of the grantor. In most cases, if not in all, proof by acknowledgment would be deemed more satisfactory than by witnesses; but the legislature having made a distinction between the cases, whether it was intended or not, reasonable or unreasonable, the courts are bound by the clearly expressed language of the act."

Nor can such provision, being omitted in the purview or body of the act, be supplied by the preamble. We are told by high authority that "Barrington has shown in his observations on the statutes, by many instances, that a statute frequently recites that which was not the real occasion of the law, or states that doubts existed as to the law, where in fact none were entertained. The most common recital for the introduction of any new regulation, has been to set forth that doubts have arisen at the common law. Frequently these alleged doubts never existed at all." Dwarris on Constitutions and Statutes, p. 109. This being so, it would not be safe to rely on the preamble for the occasion or purpose of the law.

The preamble is not an essential part of the act. It is often, and now, indeed, generally omitted, and is without force in a legislative sense, being but a guide to, and not the vehicle of, the import of the statute. And to what is it properly a guide—to the meaning of the enactment?

No; but to the intentions of the framer, which is only the first stage on the road in the construction of statutes." Potter's Dwarris, p. 107. It is only the first stage; for if there are not words in the enacting clause to carry out the intention, it is of no force. "It is chiefly from the purview of the act that the will of the legislature is to be learned. And when this is clear and express, neither preamble nor title will avail to contradict or overrule it." Sedgwick on Construction of St. and Const. Law, p. 45. The preamble to the statute, says the supreme court of Illinois, is no part of the act. It may assist in ascertaining the true intent and meaning of the legislature, when that is doubtful and uncertain, from the body of the act. "The preamble is properly referred to when doubts or ambiguities arise upon the words of the enacting part. The preamble can never enlarge; it cannot confer any power *per se.*" Mr. Justice Story, cited by Dwarris, *supra.*

In support of the doctrine that the preamble cannot extend the enacting clause, Lord Ellenborough said, in *Wilson* v. *Knubley,* 7 East. 128: "I agree that the grievances recited in the preamble to the act, would have led one to suppose that the legislature meant to have given a larger remedy than the action of debt against the devisee of land, to recover damages for a breach of covenant by the devisor. But for us to extend the words to the action of covenant would be to legislate, and not to construe the acts of the legislature." Lord Erskine said, in *Mason* v. *Armitage:* "It is said in the report that the preamble shows the intention; but the law is, that if the enacting part will bear only one interpretation, the preamble shall not confine it. If that is doubtful, then the preamble may be applied to throw light upon it." 13 Vesey Jur. 36. I will refer only to one other case, *Kent* v. *Somervell,* 7 Gill & Johnson's Rep. p. 274, decided by the supreme court of Maryland, which is fully in accord with the doctrine on this subject as we have stated it.

The application is obvious. The enacting clauses of the statute making provision only with regard to coupons detached from bonds of the Commonwealth, issued under the act of 1871, and making no provision with regard to coupons detached from bonds issued under the act of 1879, the circumstance that the latter are mentioned in the preamble, and though the representation, by way of recital, of a state of things as inducements to the act which follows, might be applied to the latter as well as the former, the latter not being within the enacting clauses, to bring them within the purview of the act, would be to go beyond what the legislature did, and to give to the preamble the province of enlarging and extending the act of legislation beyond the purview of the statute, and of conferring powers *per se*, which is warranted by no decision that has ever been made, but is contrary to the settled doctrine on the subject, as declared in judicial decisions, and maintained by the most eminent sages of the law in their published works. It would be to assume legislative power by the court.

We are, therefore, of opinion that the defence made by the defendant below, under the act aforesaid of January 14th, 1882, could not be maintained, and consequently the demurrer of the plaintiff below to his answer was properly sustained, and the peremptory *mandamus* awarded, and that the judgment of the hustings court of the city of Richmond be affirmed.

We have not considered the question as to the constitutionality of the act of January 14, 1882, raised in the argument, as its decision in this case was unnecessary in the view we took of it. And this seemed to be most proper, as it is expected that question will soon be put to rest by the decision of the supreme court of the United States in a case which went from this court.

JUDGMENT AFFIRMED.