McCabe, J.
The appellant was prosecuted before a justice of the peace by affidavit charging that on the 9th day of October, 1895, and at divers other times at said county of Blackford and State of Indiana, before that, he did then and there knowingly and unlawfully use, light, and burn natural gas for illuminating purposes in what is known as flambeau light.' The justice overruled a motion to quash the affida *624 vit and upon a trial found the defendant guilty, assessing his fine at $1.00 and rendered judgment upon the finding and for costs, from which he appealed to the Blackford Circuit Court. He there renewed his motion to quash which that court overruled, and upon his plea of not guilty a jury upon a trial found him guilty, fixing his punishment at a fine of $1.00, upon which the court rendered judgment over appellant’s motion for a new trial. The assignment of errors calls in question the rulings above named, which rulings are the only questions presented by this appeal.
The statute, with a violation of which appellant was charged in the affidavit, provides that: “The use of natural gas for illuminating purposes, in what are known as flambeau lights, is a wasteful and extravagant use thereof, and is dangerous to the public good, and it shall therefore be unlawful for any company, corporation, or person, for hire, pay or otherwise, to use natural gas for illuminating purposes in what are known as flambeau lights in cities, towns, highways or elsewhere: Provided, That nothing herein contained shall be construed as to prohibit any such company, corporation, or person from the necessary use of such gas in what are know as ‘jumbo’ burners enclosed in glass globes, or lamps or by the use of other burners of similar character so enclosed, as will consume no more gas than said ‘jumbo’ burners.” Secti'on 2316, Burns’ R. S. 1894 (Acts 1891, p. 55, section 1).
Section 3 of the act provides that on conviction the person so convicted shall be deemed guilty of a misdemeanor and fined in any sum not exceeding $25.00, and for a second offense in any sum not exceeding $200.00. Section 2318, Burns’ R. S. 1894 (Acts 1891, p. 55, section 3).
It is contended that the circuit court ought to have sustained the motion to quash the affidavit because *625 the act violates the provision in the fourteenth amendment to the federal constitution that no state shall “deprive any person of life, liberty or property without due process of law,” in that it deprives the owner of a gas well of his property in the gas; and also that it violates the fifth amendment of the federal constitution provi ding that “no person shall be deprived of life, liberty or property without due process of law.” Also that it violates section 1, of the Bill of Rights of the state constitution, declaring “that all men are created equal; that they are endowed by their Creator with certain inalienable rights; that among these are life, liberty and the pursuit of happiness;” also the twenty-first section providing that: “No man’s property shall be taken by law without just compensation;” and also section twenty-three providing that: “The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities which upon the same terms shall not equally belong to all citizens.” Counsel have not pointed out or explained how the act violates this last provision in the Bill of Rights, nor do we see or know how it can do so and hence we conclude that it does not.
Nor have they pointed out or explained how it violates the provision securing the inalienable right to life, liberty and the pursuit of happiness, to each individual, and we are unable to perceive how it does so. While our republican government guarantees the right to pursue one’s own happiness, yet that government is charged with the duty of protecting others than appellant in the pursuit of their happiness, and hence the inalienable right to pursue one’s own happiness must necessarily be subject to the same right in all others. Hence when that right is asserted in such a manner as to conflict with the equal right to the same thing in others, it is not an inalienable right, nor *626 a right at all, but is a wrong. This demonstrates the wisdom of the maxim that true liberty must be regulated and restrained by law. If,’ therefore, it makes appellant happy to waste natural gas for the want of which others are made to suffer and be unhappy, as the direct result of such waste, then the pursuit of such happiness is not an inalienable right but a positive wrong. That leaves no objection to consider except that it deprives the individual of property without due process of law, or without compensation in violation of the provisions quoted from the federal and state constitutions.
It is agreed on both sides that the act is an exercise of, and that it calls into exercise the police power-of the State.
It is true that natural gas when brought to the surface and secured in pipes is property belonging to the person in whose pipes it is secured. State, ex rel., v. Indiana, etc., Mining Co., 120 Ind. 575; Jamieson v. Indiana, etc., Oil Co., 128 Ind. 555.
But the act in no way deprives the owner of the full and free use of his property. It restrains him from wasting the gas to the injury of others, to the injury of the public.
It might present a very different and serious question whether the legislature, has- the power to prevent him from wasting his own property, if by so doing he in no way injured others as appellant’s learned counsel erroneously assume.
In People’s Gas Co. v. Tyner, 131 Ind., at pp. 281, 282, this court, appropriating the language of the Supreme Court of Pennsylvania in Westmoreland, etc., Gas Co. v. DeWitt, 130 Pa. St. 235, 18 Atl. 724, said: “Water and oil, and still more strongly gas, may be classed by themselves, if the analogy be not too fanciful, as minerals ferae naturae. In common with animals, and un *627 like other minerals, they have the power and tendency to escape without the volition of the owner. Their ‘fugitive and wandering existence within the limits of a particular tract is uncertain.’ * * * They belong to the owner of the land, and are a part of it, so long as they are on or in it, and are subject to his control; but when they escape, and go into other land, or come under another’s control, the title of the former owner is gone. Possession of the land, therefore, is not necessarily possession of the gas. If an adjoining, or even a distant, owner, drills his own land, and taps your gas, so that it comes into his well and under his control it is no longer yours but his.” It is not to prevent an adjoining or a distant owner from doing this that the act in question was passed. But it was to prevent him from needlessly wasting the gas which he is drawing from the general reservoir which nature has furnished, and which experience and prudence teach is liable to be exhausted. It was further said in the Tyner case, from which we have just quoted: ‘‘The rule that the owner has the right to do as he pleases with or upon his own property is subject to many limitations and restrictions, one of which is that he must have due regard for the rights of others. It is settled that the owners of a lot may not erect and maintain a nuisance thereon whereby his neighbors are injured.”
By the Tyner case, supra, this court has likened natural gas and laws regulating the same to wild animals and laws regulating the taking of such animals. The Supreme Court of Minnesota in State v. Rodman, 58 Minn. 393, 59 N. W. 1098, having under consideration the constitutionality of a certain game law of that state, said: “We take it to be the correct doctrine in this country that the ownership of wild animals, so far as they are capable of ownership, is in the State, *628 not as proprietor, but in its sovereign capacity, as the representative, and for the benefit, of all its people in common. The preservation of such animals as are adapted to consumption as food, or to any other useful purpose, is a matter of public interest; and it is within the police power of the State, as the representative of the people in their united sovereignty, to enact such laws as will best preserve such game, and secure its beneficial use in the future to the citizens, and to that end it may adopt any reasonable regulations, not only as to time and manner in which such game may be taken and killed, but also by imposing limitations upon the right of property in such game after it has been reduced to possession.”
' Fish laws are of the same- general nature. And their constitutionality has been upheld.
In Gentile v. State, 29 Ind., at pp. 415, 417, it was said: “The proposition is, that the legislature ‘has no power to pass a law denying or abridging the right of the people of the State to fish in their own waters, and upon their own soil, at pleasure” that land owners •derive titles from the United States, and their grants include all unnavigable streams of water passing over their lands, with the exclusive right to fish therein, within their own boundaries; and that where the land, bounds on such a stream, the stream is the common property of the adjoining proprietors, who have the exclusive right of fishing. And it is claimed that this right to fish may be exercised at all times, at the will of the land owner, and is not subject to be controlled, restrained or abridged by the legislature. * * * The proposition of appellant’s counsel is erroneous, in confounding the exclusive right of the owner of the stream to fish therein, with the right of the property in the fish before they are taken. But fish are ferae naturae, and as far as any right of prop *629 erty in them can exist, it is in the public, or is common to all. No individual property in them exists until they áre taken and reduced to actual possession. 2 Black. Com. 392. They are natives of the water; it is there they generate and live and grow, and no individual property in them can attach whilst they remain there free. But, as they are valuable for food, the public has an interest in their protection and growth. * * * The same principle precisely is involved in the numerous game laws of this and other' states, the constitutionality of which, we believe, has never been seriously, controverted. Whether the fish inhabiting most of the water courses of this State are sufficiently numerous or valuable to require or justify the enactment of this statute, is a question for the legislature alone, and with which the courts have nothing to do. The question presented here is, had the legislature the power, under the constitution, to enact the law? And if so, then if it be found impolitic, the remedy is by an application to the legislature for its repeal. * * * We find nothing in the constitution restricting the power' of the legislature over the subject, and therefore hold the statute constitutional.” To the same effect and following that case are State v. Hockett, 29 Ind. 302; State v. Boone, 30 Ind. 225; and Stuttsman v. State, 57 Ind. 119. The principle governing in these cases is very much in point in the question now before us.
It was for the preservation of the fish for the benefit of all the people of the State that that statute was enacted prohibiting the taking of any fish in any way for a period of two years from and after the taking effect of the act, even by an owner of the lake, stream or river, and even though the fish were to be used in the laudable supply of needed food. That was the assertion of a far greater and more sweeping power than *630 is involved in the act now before us. It only attempts to restrain all persons from drawing from the general reservoir of nature a needless amount of natural gas only to be wasted. All persons in the State are far more interested in preventing such needless waste of gas than they were in preventing the owners of lakes and streams from taking any fish at all therefrom for a period of two years, though for necessary food. To the same effect are Commonwealth v. Gilbert, 160 Mass. 157, 35 N. E. 454; Commonwealth v. Look, 108 Mass. 452; Commonwealth v. Alger, 7 Cush. 53; Commonwealth v. Tewksbury, 11 Metc. (Mass.) 55; Cole v. Eastham, 133 Mass. 65; Rideout v. Knox, 148 Mass. 368, 19 N. E. 390; Blair v. Forehand, 100 Mass. 136; Phelps v. Racey, 60 N. Y. 10; Davis v. State, 68 Ala. 58, 44 Am. Rep. 128; Lawton v. Steele, 152 U. S. 133.
The case of Commonwealth v. Tewksbury, supra, was a case in which Tewksbury was indicted for the violation of a statute of Massachusetts providing that: “Any person who shall take, carry away or remove, by land or by water, any stones, gravel or sand, from any of the beaches in the town of Chelsea, * * * shall, for each offense, forfeit a sum not exceeding $20.00,” etc. He defended on the- grounds that he was the owner of the land in fee and the statute did not intend to prohibit the owner from taking gravel from it; and if the statute did so intend it was unconstitutional under article ten of the declaration of rights, which, like our own constitution, provided that “no part of the property of any individual can be taken from him or applied to public uses without making him reasonable compensation therefor.” The great jurist, Chief Justice Shaw, delivering the judgment of the court said: “The court are of opinion that such a law is not a taking of property for public use, within the meaning of the constitution, but is a just and legitimate ex *631 ercise of the power of the legislature to regulate and restrain such particular use of property as would be inconsistent with, or injurious to, the rights of the public. All property is acquired and held under the tacit condition that it shall not be so used as to injure the equal rights of others, or to destroy or greatly im•pair the public rights and interests of the community. * * * Without hazarding an opinion upon any other question, we think that a law prohibiting an owner from removing the soil composing a natural embankment to a valuable, navigable stream, port or harbor, is not such a taking, such an interference with the right and title of the owner, as to give him a constitutional right to compensation, and to render an act unconsitutional which makes no such provision, but is a just restraint of an injurious use of the property, which the legislature have the authority to make.”
In Lawton v. Steele, supra, Mr. Justice Brown, of the Supreme Court of the United States, delivering the opinion of that court, said: “The extent and limits of what is known as the police power have been a fruitful subject of discussion in the appellate courts of nearly every state in the Union. It is universally conceded to include every essential to the public safety, health and morals, and to justify the destruction or abatement, by summary proceedings, of whatever may be regarded as a public nuisance. * * * Beyond this, however, the state may interfere wherever the public interests demand it, and in this particular a large discretion is necessarily vested in the legislature to determine not only what the interests of the public require, but what measures are necessary for the protection of such interests.”
If this be a correct enunciation of the law on the subject in hand, and we think it is, it disposes of much of the argument of the learned counsel as to the *632 question of fact involved in the act in question as to whether,' in fact, burning natural gas by flambeau lights is a waste of natural gas. When the legislature inquired into that fact their determination was conclusive on the courts. Gentile v. State, supra; Jamieson v. Indiana, etc., Oil Co., supra; Mode v. Beasley, 143 Ind. 306, and cases cited on page 315; Woods v. McCay, 144 Ind. 316, and cases cited on pages 322, 323; Board, etc., v. State, ex rel., ante, 476.
The contention of appellant that the act is void because, as he asserts, it violates the spirit of our institutions, or impairs those rights which it is the object of free government to protect, cannot be maintained, nor can it be declared unconstitutional simply because it may be wrong and unjust. Welling v. Merrill, 52 Ind. 350; City of Logansport v. Seybold, 59 Ind. 225; State v. Gerhardt, 145 Ind. 439.
Whether a statute encroaches upon the natural rights of the citizen is a legislative, and not a judicial question, and courts cannot, overthrow it upon that ground. Hedderich v. State, 101 Ind. 564; Eastman v. State, 109 Ind. 278; Phenix Ins. Co. v. Burdett, 112 Ind. 204; Maxwell v. Board, etc., 119 Ind. 20, Johnston v. State, ex rel., 128 Ind. 16; Jamieson v. Indiana, etc., Oil Co., supra.
With the justice; the propriety, or the policy of a statute the courts have nothing whatever to do so long as the act does not infringe some provision of the constitution, state or federal, or some valid treaty or law of congress. The state legislature possesses all legislative power, except such as has been delegated to congress and prohibited by the constitution of the United States, to be exercised by the United States, and such as are expressly or impliedly withheld by the state constitution from the state legislature. The only limitations, therefore, upon the power of the legisla *633 ture are those imposed by the state constitution, the federal constitution and the treaties and acts of congress adopted and enacted under it. State, ex rel., v. McClelland, 138 Ind. 395, and authorities there cited; Hedderich v. State, supra.
Therefore, the doctrine invoked by the appellant, that a statute may be overthrown by the courts on the ground that it is unreasonable, is contrary to our decisions and has no place in our jurisprudence.
We have seen that the only constitutional barriers claimed by appellant as having been violated by the act are not so violated thereby.
It is further contended that the act violates section 1 of article 7 of the state constitution, providing that: “The judicial power of the State shall be vested in a Supreme Court, in circuit courts and in such other courts as the General Assembly may establish” in that it declares the use of natural gas in flambeau lights a wasteful and extravagant use thereof. This, it is claimed, is a judicial determination of what constitutes a wasting of gas. It is nothing more than a recital of the fact that the legislature ascertained by investigation, and the ascertainment of which gave rise to the enactment.
We have seen that there are facts that the legislature may inquire into and ascertain in order to apply the proper remedy by legislation. Gentile v. State, supra; Jamieson v. Indiana, etc., Oil Co., supra; Mode v. Beasley, supra, and cases there cited; Wood v. McCay, supra, and cases cited; Board, etc., v. State, ex rel.. supra.
Very many statutes, if not all of them, are enacted through the influence of the investigation into the facts by the legislature, and the ascertainment thereof by the legislature, and many of them contain a recital of such facts set forth in Avhat is called the preamble, *634 which is defined as a clause introductory to and explanatory of the reasons for passing the act.
Such preamble is in no sense judicial action. And if it were, it would not invalidate the act because it is not an essential part of the statute. Copeland v. Memphis, etc., R. R. Co., 3 Woods 660; Beard v. Rowan, 9 Pet. 317; Commonwealth v. Smith, 76 Va. 484; 18 Cent. Law Journal, 27-29; Potter Dwarris’ Statutes, 265; Endlich Statutes, section 63; Sutherland Stat. Const., section 212.
We, therefore, hold that none of the objections to the validity of the act are well taken.
Under the motion for a new trial the action of the circuit court in giving cértain instructions is called in question. The instructions, in effect, told the jury that if the facts stated in the affidavit were proven beyond a reasonable doubt, the jury should find the defendant guilty. The only objection urged to such instructions is the invalidity of the statute, as already indicated. It follows from what we have already decided above that there was. no error in giving the instructions.
Complaint is made that the court permitted the State to propound to a juror the following question: “Mr. Jonagan, do you feel that you could return a ver-' diet according to the law as given you by the court and the evidence as may be given you by the witness?”
Appellant’s counsel refer us to the motion for a new trial for this question "and their objection thereto, wherein such question and objection are recited. But it has been so often decided by this court that such matters cannot be brought into the record by copying them into the motion for a new trial that we deem it unnecessary to cite a full list of the cases. Deal v. State, 140 Ind. 354, and cases there cited. We turn to the bill of exceptions and find the question and the court’s ruling, Overruling appellant’s objection thereto, *635 and the juror’s answer to the question in the affirmative; but what the appellant’s objection to the question was, is not stated. There is an objection stated in the motion for a new trial, with the grounds thereof. But it not being a part of the record we have no legal means of knowing that appellant ever stated to the court any "grounds or reasons for his objection. Therefore, if the overruling of such objection was even error, the record fails to make it appear.
Permitting the State to ask the. following questions of the juror, De Witt, is complained of: “Have you formed or expressed any opinion as to the constitutionality of the law enacted for the purpose of preventing the use of gas for illuminating purposes in what are known as flambeau lights?” The juror answered in the affirmative, but the question, objection thereto and ruling of the court thereon is in the same condition as the preceding one, hence no question as to the correctness of the ruling is presented by the record.
Complaint is made that the court in the hearing of the jury, while the juror De Witt was being examined on his voir dire, remarked: “This jury is not here to try the constitutionality of this law.” There was no request made to discharge the jury. There was no available error in the remark, especially as appellant made no motion to discharge the jury, Coleman v. State, 111 Ind. 563; Kurtz v. State, 145 Ind. 119; and as there is no question that the appellant was guilty of violating the statute. Besides, after making the remark, the court, at the proper time, among other things, instructed the jury that, under the constitution of the State, they had the right to determine the law for themselves.
Similar questions to those above mentioned were put and permitted to be answered by the jurors, Campbell and Millikan, but they are in the same con *636 dition as the other questions, objections and answers, and, like them, the record fails to show what the objections were, and, hence, fails to make any error in that bespect affirmatively appear.
The State having proved by a certain witness that the defendant burnt natural gas in a flambeau light on the 8th or 9th day of October, 1895^ then proved, over objection of defendant, that he did so at other .times prior thereto. There is no merit in the objection, as the offense created by the act is a continuous one, a conviction of which bars another prosecution for all violations of the statute by the defendant prior to the pending prosecution. Freeman v. State, 119 Ind. 501; State v. Lindley, 14 Ind. 430.
We therefore conclude that the circuit court did not err in overruling the motion to quash, or for a new trial.
Judgment affirmed.