COMMONWEALTH *vs.* JOSEPH H. HIGGINS.

Worcester.    September 21, 1931. — November 30, 1931.

Present: RUGG, C.J., CROSBY, CARROLL, WAIT, & SANDERSON, JJ.

*Initiative.    Constitutional Law*, Legislation by initiative, Police power. *Trap.*

Legislation becoming operative under the Initiative must conform to the Constitution to the same extent as statutes enacted by the General Court.

G. L. c. 131, § 105A (formerly § 59A added to G. L. c. 131 by St. 1930, c. 428, and renumbered by St. 1931, c. 426, § 242), relating to the use of certain traps, was enacted as an exercise of the police power in the interest of the public morals and does not violate art. 1 of the Declaration of Rights; and it is constitutional.

COMPLAINT, received and sworn to before a trial justice within the town of Barre on March 6, 1931, and described in the opinion.

On appeal to the Superior Court, the complaint was tried before *Butterworth*, J., a judge of a district court sitting in the Superior Court under statutory provisions. The judge denied motions by the defendant to dismiss and that the jury be ordered to return a verdict of not guilty. The defendant was acquitted on certain counts and convicted on others. Under G. L. c. 278, § 30, the judge reported the following question for determination by this court:

"Is § 59A of G. L. c. 131 constitutional or does it violate art. 1 of the Declaration of Rights of the Constitution of Massachusetts, namely, the rights set forth in the said

article 'that of acquiring, possessing and protecting property'?"

*G. C. Sweeney,* for the defendant.

*E. G. Norman,* District Attorney, for the Commonwealth.

RUGG, C.J.   The single question presented on this report is whether § 59A, inserted in G. L. c. 131, by St. 1930, c. 428, is constitutional or whether it violates art. 1 of the Declaration of Rights of the Constitution, namely, the right "of acquiring, possessing, and protecting property." Said § 59A was an initiative measure approved by the voters at the State election of 1930 and printed on page 4 of the Acts and Resolves of 1931.   It is now § 105A of G. L. c. 131, by virtue of St. 1931, c. 426, § 242.   Its words are: "Whoever uses, sets or maintains any trap or other device for the capture of fur-bearing animals which is likely to cause continued suffering to an animal caught therein, and which is not designed to kill such animal at once or to take it alive unhurt, shall be fined fifty dollars for each offense; but this section shall not apply to traps or other devices for protection against vermin if set or maintained not more than fifty yards from any building or cultivated plot of land to the use of which the presence of vermin may be detrimental."   The defendant was charged in six counts with violation of said section, but by the jury was acquitted on three and found guilty on three. There was evidence tending to show that the defendant, a farmer, set steel traps, one in the midst of a plowed field, another at the intersection of two stone walls, and a third within an area over which in summer he allowed his chickens to roam.   The traps were set in February, when the chickens were not roaming outside the henhouse.   These traps, although within fifty yards of cultivated land, were not set for the purpose of protecting that land and were about thirty rods from the building where the chickens were housed.   The traps were set in these positions to catch foxes which had been doing, and were likely again to do, damage to the defendant's chickens, and were in the only positions practicable to catch so wary an animal as the fox.   The defendant, a trapper of experience, testified that fifty yards from a building was an unreasonable limit within which to trap a fox

doing damage to poultry. These traps were of the common steel type, designed to pinch an animal and thus prevent his escape, and were likely to cause continued suffering to an animal caught therein and were not designed to kill such animal at once or to take it alive unhurt. There was uncontradicted evidence that no practical trap is known, designed to kill an animal at once or to take it alive unhurt, which is not likely to cause continued suffering to an animal caught therein. Thus there was evidence of violation of the statute by the defendant.

The circumstance that the statute here assailed became operative as an initiative measure approved by the voters at an election gives it no superior position over statutes enacted by the General Court with respect to inquiry as to its constitutionality. It is provided in art. 48 of the Amendments to the Constitution, whereby the initiative and referendum were established, that "The limitations on the legislative power of the general court in the constitution shall extend to the legislative power of the people as exercised hereunder." Art. 48, "The Initiative," Part II, § 2. Thus it is made plain that all such legislation, in order to be valid, must bear the test of conformity to the Constitution to the same extent as must statutes enacted by the General Court. Statutes coming into being under said art. 48 enjoy the same presumptions in their favor as do statutes enacted in the usual way. All rational presumptions are made that a statute enacted by the General Court is valid. The court will not refuse to enforce it unless its conflict with the Constitution is established beyond reasonable doubt. It will not be treated as void unless it is impossible by reasonable construction to interpret its provisions in harmony with the fundamental law of the Commonwealth. *Perkins* v. *Westwood,* 226 Mass. 268, 271. *Commonwealth* v. *S. S. Kresge Co.* 267 Mass. 145, 148. On principle all these presumptions must be indulged with respect to statutes established under the initiative amendment. The question presented here, as in other cases of this nature, is not one of expediency or wisdom, but of constitutional power.

The statute here assailed is aimed at suppression of the cruelty engendered by capturing the designated animals in traps of such nature as cause them pain and suffering for any appreciable length of time. There are numerous statutes indicative of a policy on the part of the Commonwealth against causing unnecessary suffering to animals. G. L. c. 131, §§ 58, 59; c. 272, §§ 77, 82, 84, 86, 87, 88. This statute was enacted in the exercise of the police power. It has become elementary in constitutional law that the "natural, essential, and unalienable rights" of all men to acquire, possess, and protect property are subject to reasonable regulation in the interest of the public health, the public safety, and the public morals. *Commonwealth* v. *Strauss,* 191 Mass. 545, 550. *Loring* v. *Commissioner of Public Works,* 264 Mass. 460, 465, 466. A statute penalizing cruelty to animals was upheld in *Commonwealth* v. *Turner,* 145 Mass. 296. It there was said, at page 300, that such a statute "does not define an offence against the rights of property in animals, nor against the rights of the animals that are in a sense protected by it. The offence is against the public morals, which the commission of cruel and barbarous acts tends to corrupt." *Commonwealth* v. *Tilton,* 8 Met. 232. *Commonwealth* v. *Curry,* 150 Mass. 509. It must be held, therefore, that the statute in question was intended to be in the interest of the public morals. It is directed against acts which may be thought to have a tendency to dull humanitarian feelings and to corrupt the morals of those who observe or have knowledge of those acts. The capture of a wild animal contrary to the provisions of this statute undeniably must cause injury to the part of the body caught in the trap, with attendant pain. It falls within the general category of cruel treatment. Even if it be assumed that it is impracticable to capture such predatory animals as foxes within fifty yards of the place where their prey is kept, this does not render the statute void. Of course the defendant has a right to protect his property by every reasonable means. But he must yield his views of what is reasonable for that purpose to the judgment of the moral standard of the community as

embodied in a statute.   The general subject of suppression of cruel treatment of animals being within legislative competency, the details in the main must be regarded as within the discretion of the law making power.   This decision is reached with full appreciation of the hardship to farmers and raisers of poultry in restricting their means of defence against so cunning an enemy as the fox.   Farmers have been made subject to both favorable and unfavorable legislation which has been upheld. *Commonwealth* v. *Titcomb,* 229 Mass. 14, 19.   *Middleton* v. *Texas Power & Light Co.* 249 U. S. 152, 157.   The statute here assailed is general in terms, includes all trappers, and is not restricted to farmers.   Simply because it may affect farmers more acutely than other members of society is not sufficient alone, in the circumstances here disclosed, to stamp the statute as invalid in classification or discriminatory in nature.   *Commonwealth* v. *Libbey,* 216 Mass. 356;   *Vigeant* v. *Postal Telegraph Cable Co.* 260 Mass. 335;   *Brest* v. *Commissioner of Insurance,* 270 Mass. 7, 14, 15.   Giving effect to the principles invoked by the defendant, *Wyeth* v. *Cambridge Board of Health,* 200 Mass. 474, 478, it cannot in our opinion rightly be held that the statute here attacked transcends legislative power.   *Commonwealth* v. *Lufkin,* 7 Allen, 579. *Commonwealth* v. *Whitman,* 118 Mass. 458.   *Salem* v. *Maynes,* 123 Mass. 372.   *Cole* v. *Eastham,* 133 Mass. 65. *Commonwealth* v. *Gilbert,* 160 Mass. 157.   *Spector* v. *Building Inspector of Milton,* 250 Mass. 63.   *Brett* v. *Building Commissioner of Brookline,* 250 Mass. 73.   Decisions in other jurisdictions support this conclusion.   *Greer* v. *State,* 169 Ga. 552.   *Barrett* v. *State,* 220 N. Y. 423.   *Lawton* v. *Steele,* 152 U. S. 133, 136, 137.   If and in so far as there is anything contrary to this result in *Aldrich* v. *Wright,* 53 N. H. 398, we cannot follow it.

*Verdict to stand.*